LYDIA W. WOOD *vs.* MAINE CENTRAL RAILROAD COMPANY.

ELLA M. BEEDY *vs.* SAME.

ARTHUR E. BEEDY *vs.* SAME.

Kennebec.    Opinion July 17, 1906.

*Railroad Crossing.    Negligence.    Care on Part of Passengers for Hire a Question*
*of Fact.    R. S., c. 52, §§ 70, 86.*

When passengers for hire, riding in a public carriage, are about to cross a
railroad track it cannot be said as a matter of law that it is negligence on
their part if they are not as alert as the driver of the team over which
they have no direct control, in looking and listening for an approaching
train before attempting to cross the track, but it is a question of fact for a
jury, under all the circumstances, to determine whether or not such pas-
sengers were in the exercise of ordinary care.

In the cases at bar, an instruction was given which was clearly within the
rule of law, and the fact, if such be the fact, "that the language of the
judge unduly emphasized the defendant's legal responsibility and unduly
minimized its legal privileges and rights," is not deemed sufficient to sus-
tain the exception to the instruction.

In the three above entitled actions, there was a verdict for the plaintiff in each action. *Held:* that the motions for new trials must be overruled on the question of liability, and also that the verdict in favor of the plaintiff husband must be sustained, but that the verdicts in the other two actions are excessive and that therefore on the question of the assessment of damages these two verdicts must be set aside unless the respective plaintiffs file remittiturs as stated in the opinion...

On motions and exceptions by defendant. Exceptions overruled. Motion overruled in one action and sustained in the other two actions on the question of damages unless remittiturs are filed.

Three actions on the case for negligence and all tried together. The actions by the two female plaintiffs were each to recover damages for personal injuries sustained by them and caused by the alleged negligence of the defendant company. The remaining action was brought by the husband of one of the other plaintiffs, to recover for expenditures and loss of service arising from the injury to his wife. These actions all grew out of the same accident which occurred in the Maine Central yards in Waterville, on the 24th day of July, 1903. Plea, in each case, the general issue.

The verdict in each case was for the plaintiff, in the following sums: Ella M. Beedy, $9,866.33; Arthur E. Beedy, $4,204.66; Lydia W. Wood, $7,558.92.

The defendant seasonably filed a motion to set aside each of said verdicts as against evidence and for excessive damages.

The defendant also excepted to certain instructions given to the jury by the presiding Justice.

The case appears in the opinion.

*Heath & Andrews and Paul R. Blackmur* (of the Massachusetts Bar) for plaintiffs.

*Orville Dewey Baker and Charles F. Johnson,* for defendant.

SITTING: WISWELL, C. J., STROUT, SAVAGE, PEABODY, SPEAR, JJ.

SPEAR, J. These three actions are for personal injuries against the Maine Central Railroad. They come up on motion and exceptions. They all grow out of the same accident and depend upon the same state of facts. Two of these suits are brought by the persons injured and the third by the husband of one of them for

damages.   The accident occurred on the 24th of July, 1903, about seventeen minutes past eight o'clock in the morning of a clear day. The parties to the accident were two women passengers for hire in a mail stage with the driver of the stage which was struck by a freight train of four cars running backwards and pushed across a public crossing whereby the women were severely injured.

It is not controverted that they were lawfully travelling on Alden Street, a public highway in Waterville that crosses the yard of the defendant company connecting Ticonic Street and College Avenue. Six tracks run across the street covering the length of it for a distance of about eighty feet.   There were no gates, flagmen, signals, signs or precautions of any kind calculated to warn persons of the approach of passing trains.   The yard on both sides of the street was a long one and the use by the railroad of the tracks across the street was extensive.   The use by travellers was equally frequent. As already observed, there were three parties in the carriage, an open carryall, which was being driven by a mail carrier who took passengers for hire, and the two ladies and himself were the occupants.   The carryall had two seats, the driver was in the front seat, one of the plaintiffs, Mrs. Wood was on the seat with him, and Mrs. Beedy, the other plaintiff, occupied a rear seat alone.   This carriage was a common carryall, with a small awning overhead with four small supports, giving an unimpeded view in every direction to the passengers.   The plaintiffs were not traversing this street of their own choice, as the driver, receiving the usual fare, selected his own route.   There seems to have been no lack of reasonable care on the part of the plaintiffs in selecting a driver of experience and one in whom they were entitled to have the confidence usually placed by passengers in a driver of a public carriage.   He owned the team and had driven the stage route for eight years.   He had been accustomed to the use of horses for thirty years.   The horse driven on this occasion was twelve years old, steady, kind, fearless, easily managed and often driven by women.   Austin had lost an arm when fourteen years of age but by long experience had learned to drive properly with one hand.   There is no pretence in this case that the lack of a hand in any way contributed to the accident.   He had passed

this crossing for eight years, at least once a week. He was well acquainted with the location and the tracks. No question was raised as to his sobriety, intelligence and experience. Mrs. Beedy had known him for a long time and had driven with him many times before in the same carriage and had an opportunity to notice his care and skill in driving. Mrs. Wood had driven with him once. Nothing in the case tends to show that anything happened to modify the confidence these women seemed to have had the right to repose in the carrier charged with the responsibility of conveying them safely.

These plaintiffs were coming from Fairfield and the driver pursued a course which took him along Alden Street and over the crossing in question. This crossing is composed of six tracks and as before stated, covered the length of the street to a distance of about eighty feet. The team had passed five tracks and was on the last and final track when the accident occurred. The horse had got completely over the last crossing so that he was not touched or injured. The carriage itself was right on the crossing between the rails of the final crossing when the accident occurred and the plaintiffs were injured. It was the off hind wheel or between the hind wheel and the front wheel of the carryall on the off side that the train struck.

The train which collided with them was a shifting freight having four loaded cars and an engine, being backed easterly towards Bangor. They were hit not by the engine but by the freight car being at the head of the train as it was backed up.

It is not disputed that the driver when he approached Alden Street and was about to turn into it, stopped his horse and looked across all the tracks to see if the street was clear its entire length. The evidence shows that not only the driver but the two plaintiffs also took the precaution to look and listen for the approach of a train over this street. After this until the moment of collision, no flagman, gate, signal or other precaution warned the driver or the occupants of the carriage of the approaching train. Under these conditions the driver proceeded until the collision. The two plaintiffs had no control over the management of the team. The driver said nothing to them but simply drove on.

Upon these different tracks both passenger and freight cars were

yarded, one lapping by the other in such a way, as the plaintiffs claim, as to completely impede the view of the car approaching upon the last track crossed by them, until they were nearly, if not quite, upon the track. In discussing the evidence, we will call the track upon which the accident occurred, track No. 1, and the other tracks 2, 3, 4, 5, and 6, in the order of their location.

Under the above state of facts the plaintiffs contend that the cars stretching along these various tracks in echelon order, including a car on track 2 but a few feet from the crossing, prevented them from hearing or seeing the approaching car; and that this fact, coupled with the undue speed of the train and the absence of any signals or warning of its approach, established a plain case of negligence on the part of the defendant company. On the other hand, the defendant claims that the cars standing on these various tracks were so distributed that the approaching train could have been seen both by the driver and the plaintiffs, if in the exercise of due care, from the third track, and that as a matter of fact, no car was standing upon the second track and that the train was backing down at a rate of speed not exceeding six miles an hour and that therefore the defendant was not negligent. The jury found in favor of the plaintiffs upon the question of the defendant's negligence, and we cannot say that their verdict upon this issue is so clearly wrong as to justify us in setting it aside.

But the defendants say, admitting that they were negligent in the respects referred to, they are not liable for the injuries occasioned by the accident because the plaintiffs were not only guilty of negligence as a matter of fact, but admitting the facts substantially as they claim, were guilty of contributory negligence as a matter of law.

The last two propositions interlace and must be discussed together, inasmuch as whether the plaintiffs were guilty of contributory negligence, conceding the defendant's negligence, depends upon determining the legal duty owed by the plaintiffs to the defendant in crossing these tracks. It is of course true, that if these plaintiffs could have seen or heard the car, backing down in such a manner as to threaten their safety, and in season to notify the driver of the danger and request him to stop, it was their duty to do so. But did they have

the opportunity to thus observe the approaching car? It is not our purpose to discuss the testimony at any length or to make a compilation of the time and distances respectively occupied by the team and the train in reaching the crossing.

The determination of one very important disputed fact we think justified the jury in relieving the plaintiffs from the charge of contributory negligence upon this point as a matter of fact. As already seen, the plaintiffs contend that a car was sitting upon track 2, but a few feet from the crossing. The defendants on the contrary say that there was no car upon track 2, anywhere near the crossing. If a car was upon track 2 near the crossing, then it is apparent that the plaintiffs could not have seen the approaching car until it had passed by the end of the car sitting upon track 2, thus bringing the team and the backing car in close proximity upon track 1, when they first came in sight of each other. On the other hand, if no car was upon track 2, near the crossing, then the plaintiffs could have seen the approaching car for quite a little distance up the track before it reached the crossing. We think the evidence is quite conclusive, at any rate, sufficiently so to fully warrant the inference by the jury, that a car was upon track 2, near the crossing at the time of the collision. The testimony of the defendant's own witnesses seem to establish this fact. Two of the defendant's witnesses explicitly stated that they were opposite the window of the telegraph office and that the end of their car, the colliding car, was opposite Fenner's windows, 66 feet from the crossing, when they first saw simply the head of a horse. Without going into any mathematical calculation of the distances or the time it would take to traverse them respectively by the team and the train, the situation as disclosed by the plans and the evidence quite clearly demonstrates that a car was sitting upon track 2, as claimed by the plaintiffs; otherwise, the defendant's employees could have seen the horse's head for some time and some distance before they arrived at the point opposite the window of the telegraph office.

We therefore think the jury did not so far err as to require the intervention of the court when they came to the conclusion, as they must have done in order to find a verdict for the plaintiffs, that the

cars upon these various tracks were so located as to prevent the plaintiffs from seeing the approaching train until so near the point of collision that no reasonable time intervened, between the discovery of the train and the collision, in which they, as passengers not in control of the team, were able to avoid the accident.

But the defendant goes still further and contends that, conceding these facts in favor of the plaintiffs as found by the jury, they should be inhibited from recovery by the law governing the conduct of persons approaching and about to cross the tracks of a steam railroad. If we understand its legal position correctly, it claims that the plaintiffs, immediately before attempting to cross the track, should have looked and listened for an approaching train with the same degree of care required of them had they been driving the team themselves; and that upon the approach of danger, they should have warned the driver; that under the well settled rule in this state, that a person in the possession of unimpaired sight and hearing, if he does look and listen at a railroad crossing and neither sees nor hears a train, is negligent for not seeing or hearing it, and if he does see or hear it and attempts to cross and is injured he is negligent for making the attempt, the plaintiffs upon either alternative were negligent and cannot recover.

Upon this point the presiding Justice instructed the jury as follows:

"The railroad company contends that the standard of ordinary care on the part of the passengers for hire, riding in a public carriage, is the same as that of the driver of the carriage under the circumstances of this case, except so far as it is modified by the fact that they have no direct control over the team.

"You may find it to be substantially so, as a matter of fact, upon the evidence in this case, but I cannot say to you as a matter of law that it is negligence in itself on their part if they are not as alert as the driver in looking and listening for an approaching train before attempting to cross the track. I cannot say to you as a matter of law that they must be presumed to be negligent if as passengers they failed to look and listen. It is a question of fact for you to decide under the particular circumstances of the case.

"I have said that you may find that it was the plaintiff's duty in this case to 'look and listen.'"

To this ruling the defendant excepted, but we think the ruling was correct. It makes this distinction as to the rule of law governing the conduct of one approaching and attempting to pass a railroad crossing who is driving and in the full control and management of his team, and that governing the conduct of passengers for hire who are not driving and do not have the control and management of the team in which they are riding; that in the former case it is, as a question of law, negligence per se for a person to cross a railroad track without first looking and listening if there is a chance for his doing so. While in the latter case, it is not a question of law and negligence per se, if the passengers fail to request the driver to stop or to look and listen, but a question of fact for the jury whether under all the circumstances in the case, ordinary care required that they should do so.

It is conceded in the defendant's brief that a person riding in a covered hack would be relieved of the duty of looking and listening in crossing a railroad track and authorized to rely upon the care and skill of his driver. In such a case, the situation relieves the passenger of the duty of looking and listening. He is within a closed carriage and cannot see or hear without stopping the team and alighting from his carriage. We see no reason why the same rule as to the degree of care to be exercised should not apply to a passenger in an open carriage. All the conditions are precisely the same except that the passenger in the open carriage can better hear and see.

But this is a circumstance affecting only the greater vigilance to be exercised on the part of the passenger riding in an open carriage to bring him within the rule requiring the observance of ordinary care. In each case the passenger has a right to and must to a certain extent rely upon the vigilance of the driver. While passive reliance upon the driver might relieve the passengers in the closed hack from contributory negligence with respect to the danger he could not see or hear, the same conduct might subject a person riding in an open carriage to the charge of contributory negligence with respect to the danger they could see and hear, if paying attention. In each case

it is a question of ordinary care under all the circumstances.

We think the rule laid down by the presiding Justice goes as far as the law required. The above distinction between the duty owed by the driver of the team and a passenger is recognized and stated in *State* v. *B. & M. R. R. Co.*, 80 Maine, 430. This was a case in which the deceased was riding as a passenger either for hire or gratuitously. While the whistle of the approaching train which caused the accident was heard and discussed by the other two occupants of the carriage, the deceased was silent and by the act of the driver to which he made no objection was driven directly to the collision which caused his death. With reference to the force of the fact that the plaintiff was only a passenger, Chief Justice Peters says: "The plaintiff's case is fortified by another consideration. He neither drove, nor, as far as appears, had any control of the team in which he was riding. It is reasonable to suppose that the owner carried him for hire or gratuitously as a neighborly kindness. His position was not of the same degree of responsibility to the railroad as was that of the driver. He was a comparatively passive party. Not that he had no duty to perform. He could have asked the driver to stop the team or he could have left it. But it would be natural, even though his fears were excited, that he should defer to some extent the experience and discretion of the driver, who was in the control of his own team, and before he had time to assert his own judgment against the driver's, or perhaps fully appreciate the situation, the inevitable event was upon him. We think this fact has considerable force in the combination of circumstances which weigh against the charge of contributory negligence."

If the rule contended for by the defendant is to prevail, there is no ground upon which to predicate the above reasoning, as it is apparent that under such a rule the act of the deceased in the above case would have been negligence per se and thus have precluded any consideration of the facts.

In *Howe* v. *Minn. St. Paul & S. S. M. R. Co.*, 62 Minn. 71, the precise question of law involved in this case was fully discussed and decided. The court held that the same duty did not necessarily devolve upon the passenger as upon the driver but that he must,

however, exercise reasonable care to avoid the danger and is responsible for his own negligence. It was said if the passenger knows the driver to be incompetent, sees that he is neglecting his duty, or participates in the driver's negligence, he is himself negligent. But that it was natural to trust somewhat to the driver seen to be watchful as under ordinary circumstances passengers have a right to rely largely upon a driver in exclusive control; that there can be no fast and hard rule. They specifically say " Every case must depend largely upon its own particular facts." The circumstantial evidence in this case may tend quite strong to prove that plaintiff, as well as driver, was negligent, but that was a question of fact for the jury." See also *Neal* v. *Rendall*, 98 Maine, 69; *Whitman* v. *Fisher*, 98 Maine, 575; *Smith* v. *Maine Central R. R. Co.*, 87 Maine, 339; *Brickell* v. *N. Y. Central*, 120 N. Y. 290; *Murray* v. *Ice Co.*, 180 Mass. 165; *Elkins* v. *B & A. R. R.* 115 Mass. 190.

We have disposed of the second exception first because it naturally came first in the discussion of the case. The first exception related to the instructions of the presiding Justice with respect to the effect of section 70 and section 86 of chapter 52, of the Revised Statutes, relating to the speed with which trains are allowed to proceed in passing through the thickly settled part of cities and towns. The substance of the instruction was as follows : " One word further in relation to the statute I read to you in regard to the speed of six miles an hour. I explained to you that of course this was not designed to be a description of the full measure of duty on the part of the railroad company, or to describe all the duties and obligations resting upon them. I did not say to you distinctly, I do say it now, that the fact that they were running more than six miles an hour without a flagman would not be conclusive evidence of negligence. It is a question of fact for the jury. But the fact that they were found violating the statute is always material and often important evidence tending to show negligence. For instance, we have another statute which requires persons about to meet and pass on the highway seasonably to turn to the right of the center of the road. Now the fact that one is found on the left side of the road in violation of the law would not be conclusive evidence of negligence on his

part, but it would be important evidence tending to show that he was negligent, if he was on the wrong side of the road, if he was violating the statute; but it might be open to explanation, there might be various reasons why he was there. I have explained also before, I believe, that they might be guilty of negligence if they were not going more than six miles an hour under given circumstances. It is a question of fact for the jury."

All that counsel have to say upon the propriety of this instruction is " That the language of the judge unduly emphasized the defendant's legal responsibility and unduly minimized its legal privileges and rights." Whether under all the circumstances in this case, this may or may not be true, we think the instruction is clearly within the rule of law governing this branch of the case.

While we do not see our way clear under the law and the evidence to set the verdict aside upon the question of liability, we are of the opinion that the jury erred in the assessment of damages. The verdict in favor of the plaintiff Ella M. Beedy was $9866.33; in favor of the plaintiff Arthur E. Beedy, her husband, for the loss of the comfort, assistance, service, society and benefit of his wife, on account of her injuries and for expenses paid in her behalf, $4204.66; in favor of Lydia W. Wood $7558.92.

It can serve no useful purpose to attempt an analysis of the evidence and undertake to give reasons for cutting down the size of these verdicts when upon a careful reading and consideration of the testimony we have become satisfied that justice requires this to be done. While the injuries to Mrs. Beedy were serious and painful, such perhaps as she would not again encounter for any sum of money, yet she has received the injuries and the question now is the amount to which she is entitled as just compensation for what she has in the past and will in the future suffer.

Upon a careful reading of the case we are convinced that $6000 will be just and adequate compensation for the injuries received by Mrs. Ella M. Beedy.

The compensation to which the husband is entitled as damages on account of the injuries received by his wife are more susceptible of computation than that of either of the other plaintiffs. The evidence

shows that at the time of the trial he had already expended about $1000 on account of the accident, and will undoubtedly be obliged for a long time at least to be under constant expense to supplement the household duties which could have been performed by his wife, but for her injuries, besides possible expense for medical attendance and medicine. While this verdict is a very large one under the circumstances of this case, yet in view of the contingencies that may arise on account of the injuries received by the plaintiff's wife, we are inclined to let this verdict stand. We are of opinion, however, that the verdict of $7558.92 in favor of the plaintiff Lydia W. Wood is clearly excessive. From a careful reading and consideration of the testimony in her case, we are fully persuaded that ample justice will be done by allowing her as compensation $4500. Our conclusion is that the plaintiff Ella M. Beedy should remit the amount of her verdict above $6000 and that Lydia W. Wood should remit the amount of her verdict above $4500, otherwise, a new trial is granted in each case. Motion overruled as to the plaintiff Arthur E. Beedy.

*Exceptions overruled.*

*Motion sustained in case of Ella M. Beedy and Lydia W. Wood, unless plaintiffs file a remittitur for all of their respective verdicts above $6000 and $4500, within 30 days from the date of the rescript in this case.*