OPINION OF THE COURT
Gerard M. Weisberg, J.
On April 24, 1975 claimant, Victoria Rivera, underwent a surgical procedure at Downstate Medical Center for the purpose of rendering her sterile. The operation, known as a tubal ligation, proved to be unsuccessful. Mrs. Rivera became pregnant in September, 1976 and subsequently gave birth to a healthy, albeit unwanted, child. In the present claim, Mrs. Rivera and her husband seek damages for medical expenses and pain and suffering incident to the pregnancy, as well as for the anticipated cost of raising the child. Liability is predicated on the alleged medical malpractice of the defendants’ physicians.[1]
The defendants have moved for summary judgment upon the theory that no cause of action exists for medical malpractice incident to a sterilization procedure which results in the birth of a healthy child. The defendants maintain that the fact of pregnancy and the birth of a baby are not injuries for which the law provides a remedy, and that Mrs. Rivera’s failure to terminate her unwanted pregnancy by an abortion precludes recovery.
The defendants principally rely on Howard v Lecher (42 NY2d 109), in which plaintiff wife gave birth to a child afflicted with Tay-Sachs disease, a genetically transmitted condition prevalent in Eastern European Jews. The disease causes rapid physical deterioration and usually death, as was the case in Howard. Plaintiffs maintained that the defendant, a gynecologist and obstetrician, failed to warn them of the danger of pregnancy, and neglected to conduct proper tests to discover the defect in time for a legal abortion. Damages sought included medical and funeral expenses incurred on behalf of the child and emotional anguish sustained by the parents. After Special Term denied defendant’s motion for summary judgment in toto, an appeal was taken to the Appellate Division and subsequently to the Court of Appeals *159 on the sole issue of damages for emotional anguish.[2] The Court of Appeals stated (p 112): "No cause of action exists, irrespective of the relationship between the parties or whether one was a witness to the event giving rise to the direct injury of another, for the unintentional infliction of harm to a person solely by reason of that person’s mental and emotional reaction to a direct injury suffered by another.”
Howard v Lecher (supra) exemplifies a class of cases in which parents of imperfect or diseased infants seek recovery for the failure of a physician to diagnose genetic defects or to warn of the risks of pregnancy in time for an abortion to be performed. There is authority in both the Second and Fourth Departments for the proposition that recovery may be had for medical malpractice of this type. (Park v Chessin, 60 AD2d 80; Becker v Schwartz, 60 AD2d 587; Karlsons v Guerinot, 57 AD2d 73), although with the limitation that vicarious emotional pain suffered by the parents may not be recovered as an item of damages. (Howard v Lecher, supra.) A differing view is taken by the First Department in Johnson v Yeshiva Univ. (53 AD2d 523), in which a physician failed to conduct proper medical tests upon a plaintiff during pregnancy and incorrectly advised her that her infant would be born without mental or physicial defects. Speaking of plaintiff’s cause of action for medical expenses and the cost of raising the infant, the court stated: "Those causes of action are not known to the law and 'should await legislative sanction and should not be accepted by judicial fiat’ (Stewart v Long Is. Coll. Hosp., 35 AD2d 531, 532, affd 30 NY2d 695)”.
The Stewart case was an action predicated upon the defendant’s failure to diagnose rubella which plaintiff had contracted during pregnancy. This resulted in the birth of an imperfect child. We note that in Park v Chessin (supra) the Second Department refused to follow its previous decisions in Stewart, apparently on the theory that it was no longer a viable precedent, owing to a change in the Penal Law regarding the legality of abortions.[3] (Penal Law, § 125.05.)
The courts have also had occasion to consider another class of cases more like the case at bar, in which recovery is sought *160 for negligence in performing a sterilization procedure which results in the birth of a healthy infant. In Ziemba v Sternberg (45 AD2d 230, 231), the Fourth Department held that such a cause of action is cognizable at law stating: "The action is basically one for malpractice, which has long been recognized as the appropriate remedy by which recovery may be had for damages sustained as the result of a physician’s failure to exercise ordinary and reasonable care in diagnosis or treatment of a patient. (Pike v. Honsinger, 155 N. Y. 201; Carpenter v. Blake, 75 N. Y. 12.)”
Two lower court decisions, Cox v Stretton (77 Misc 2d 155) and Clegg v Chase (89 Misc 2d 510), have reached different conclusions. The Cox case held that a cause of action existed for negligence in performing a vasectomy, while in Clegg, the court dismissed a cause of action for an improperly performed tubal ligation, relying principally on Stewart (35 AD2d 531, supra) and Howard (42 NY2d 109, supra). In a recent Third Department case, Paul v State of New York (59 AD2d 800, mot for lv to app den [3d Dept, March 16, 1978], the court affirmed a decision by the Court of Claims granting claimant’s motion for permission to file a late claim under subdivision 6 of section 10 of the Court of Claims Act. The decision was predicated in part upon the court’s finding that the cause of action in which claimant sought damages for medical negligence in the performance of a bilateral tubal ligation leading to an unwanted pregnancy, appeared "to be meritorious”. (Court of Claims Act, § 10, subd 6.)
The court concludes from its review of the case law that there is sufficient authority in support of claimants’ cause of action to warrant denial of summary judgment. In particular, the court relies on Ziemba v Sternberg (45 AD2d 230, supra) and Park v Chessin (60 AD2d 80, supra) which represent the most incisive analyses of the issues inherent in actions arising from unwanted or defective pregnancies. We reject defendants’ contention that the Court of Appeals decision in Howard v Lecher (supra) precludes recovery herein, since in that case, the court considered only the issue of mental and emotional distress suffered by the parents in response to the diseased condition and death of their child. Claimants herein do not seek damages for vicarious pain and suffering, but rather seek compensation for pecuniary loss directly caused by an unwanted pregnancy and for personal injuries and physical pain *161 suffered by Mrs. Rivera.[4] Moreover, we cannot agree that the anticipated cost of raising the child, which claimants also seek as an item of damages, is of necessity too speculative or immeasurable to permit recovery. (See Becker v Schwartz, 60 AD2d 587, 588, supra, concurring opn per Titone, J.) Such calculations are made by estate planners, insurance companies and sometimes by private parties as incident to support proceedings or matrimonial settlements. It may well be that the intangible benefits of parenthood, which the defendants would seek to set off against recovery, are difficult to value in monetary terms, but this is for the defendants to contend with, not claimants. In any case, the question of damages is properly a matter for the trial court after a full and fair hearing of the facts.
We similarly reject the view that courts should refrain from recognizing a cause of action such as this one unless and until the Legislature does so. The fundamental principles of tort law were created by courts not Legislatures. Where Legislatures have entered the field, it has frequently been in response to the unwillingness of the judiciary to respond to changing times or to depart from stare decisis. The progressive role which the judiciary can play is illustrated by the fact that the antiquated doctrine of sovereign immunity from tort liability has been abrogated either totally or partially in 29 States by judicial decision, not by legislative act. (See Jones v State Highway Comm., 557 SW2d 225 [Mo].) Since the time when negligence law abandoned a system of writs, courts have dealt with problems of tort liability by reference to a system of principles. In the court’s opinion, the facts of this case warrant claimants being afforded the opportunity of proving the customary elements of duty, negligence, proximate cause and damages.
We have noted the use of the term "wrongful life” in the decisions of other courts and in the media, mostly by those who oppose causes of action such as this one. The term is an unfortunate epithet, primarily because it is inaccurate as a description either of the wrong which has been committed or of the injury suffered. By analogy, the term "wrongful death” suffers from the same ambiguity, since the law does not give compensation for the death itself, but rather for the pecuniary loss which results from it. On the other hand, wrongful life *162 does seem to crystallize the fundamental idea underlying much of the opposition to such lawsuits — that idea being that birth or life, whether wanted or unwanted, perfect or deformed, is an ultimate good which can in no sense be regarded as a wrong. This idea holds a place of importance in many people’s religious and philosophical beliefs, although its is by no means shared by all.
Nevertheless, the notion that individuals should be compensated for the negligence of a physician in facilitating the birth of an unwanted child, is no more offensive to such philosophical beliefs than is the concept of birth control itself. In Griswold v Connecticut (381 US 479, 494), the Supreme Court held that the practice of birth control fell within the constitutionally protected right of privacy, which is characterized as "a fundamental personal right, emanating 'from the totality of the constitutional scheme under which we live.’ Id., [Poe v Ullman, 367 US 497] at 521.” Family planning is an essential aspect of the Fourteenth Amendment’s guarantee of the right to marry, establish a home and bring up children. (Meyer v Nebraska, 262 US 390.)
As the court recognized in Griswold (supra, p 482) the decision to limit the size of one’s family involves: "an intimate relation of husband and wife and their physician’s role in one aspect of that relation.” It follows that where a physcian’s negligence results in the birth of an unwanted child, a substantial interference with the fundamental rights of the parents occurs, which may well have catastrophic financial consequences.[5] To be realistic, one must acknowledge that there are both positive and negative apsects to childbearing. It is no answer to say that a result which claimant specifically sought to avoid, might be regarded as a blessing by someone else. Such a position would cast upon the sea of public opinion what the Supreme Court has declared to be a matter of strictly private concern. It is similarly unsatisfactory to grant immunity to physicians who negligently perform sterilization procedures. Where a fundamental right has been violated, the law must provide a remedy.
The remaining contention raised by the defendants is that claimant may not recover because she was obliged to undergo an abortion. As the court stated in Ziemba v Sternberg (45 AD2d 230, 233, supra): "The right to have an abortion *163 may not be automatically converted to an obligation to have one. The decision whether or not to undertake that medical procedure must rest on a number of factors, including the stage to which pregnancy has progressed, the health and condition of the woman at that time and the professional judgment and counsel received.”
Apart from the factors alluded to above, we are of the opinion that a rule of law which required claimant to have an abortion would constitute an invasion of privacy of the grossest and most pernicious kind. The decision to have an abortion or not is for the individual to make, based on whatever religious, philosophical or moral principles the individual may adhere to,[6] or upon consideration of the medical risks involved. [7] Just as the law may not impose the philosophy of one group upon the public at large, neither may it permit the public to invade the province of the individual in an area as private as sovereignty over one’s body. We find that claimant had no obligation to mitigate damages by undergoing an abortion.
In view of the foregoing, the court concludes that claimants have pleaded a valid cause of action and that a triable issue of fact exists as to the negligence of the defendants. (Curry v MacKenzie, 239 NY 267.) Accordingly, the defendants’ motion for summary judgment is denied.

. On the argument of the motion, the claim against Dr. Jones S. Hales was dismissed for lack of jurisdiction and the caption has been amended accordingly. (Young v State of New York, 92 Misc 2d 795, 801.)

. No appeal was taken from the cause of action which sought medical and funeral expenses incurred on behalf of the child. (See 53 AD2d 420, 422.)

. When the court decided Stewart, plaintiffs abortion would have been illegal under former section 80 of the Penal Law. (See, also, Ziemba v Sternberg, 45 AD2d 230, 232.)

. The claim alleges that as a result of pregnancy, Mrs. Rivera developed a condition known as pyelonephritis.

. This is especially true of the Riveras who already had five children.

. There are a substantial number of people who believe that sterilization is an appropriate method of family planning, but that abortion is not. For one exmaple, according to the Watchtower Bible and Tract Society of New York, there are almost one-half million Jehovah’s Witnesses in the United States, many of whom are citizens of our State. This group of Christians has long been recognized in the judicial annals of our country. (See Murdock v Pennsylvania, 319 US 105; West Virginia Bd. of Educ. v Barnette, 319 US 624.) Although they believe that sterilization "rests on the individual consciences of those involved” (The Watchtower, March 1, 1975, pp 158-159, col 1), abortion is deemed a "serious wrongness”. .(The Watchtower, Aug. 1, 1977, pp 478, 480, col 2.)

. Attorneys in the field of medical malpractice state that "claims arising out of abortions are not uncommon * * * most are settled before trial.” (Fox, Medical Malpractice Award Upheld in Legal Abortion, NYLJ, March 1, 1978, p 1, col 2.) In one such case, La Valle v Schwartzman, (61 AD2d 889), the court upheld a verdict of $275,000 in view of the severity of the injuries involved.