453 A.2d 974

**Jacqueline B. MASON, an individual, Appellant, Appellee,**

v.

**WESTERN PENNSYLVANIA HOSPITAL, a Corporation; and Robert Blockstein, M.D., Appellants, Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 20, 1982.

Decided Dec. 31, 1982.

Richard S. Dorfzaun, Larry A. Silverman, Dickie, McCamey & Chilcote, Pittsburgh, for Robert Blockstein, M.D.

Byrd R. Brown, Doris A. Smith, Brown, Smith & Schwartz, Pittsburgh, for Jacqueline B. Mason.

Donald W. Bebenek, Nora Barry Fischer, Pittsburgh, for Western Pennsylvania Hosp.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION

ROBERTS, Justice.

This is an action in assumpsit and trespass to recover damages in connection with the allegedly improper performance of a sterilization operation. The Court of Common Pleas of Allegheny County dismissed Mrs. Jacqueline Mason's complaint and sustained preliminary objections in the nature of a demurrer filed by defendants Dr. Robert Blockstein and Western Pennsylvania Hospital. On appeal, the

Superior Court sitting en banc reinstated the complaint. 286 Pa.Super. 354, 428 A.2d 1366 (1981) (Price, J., dissenting). However, the members of the Superior Court were divided as to the nature of the damages which should be recoverable if proven at trial. Allowance of appeal was granted to all parties, and this appeal followed.

The complaint alleges that in June, 1974, Mrs. Mason was admitted to defendant West Pennsylvania Hospital where she underwent a bilateral tubal ligation performed by defendant Dr. Robert Blockstein. According to the complaint, the defendants negligently performed the sterilization operation and breached express and implied warranties that the operation "would prevent [Mrs. Mason] from incurring future pregnancies." Mrs. Mason subsequently became pregnant and, on January 2, 1977, gave birth by caesarean section. The child is not alleged to be in other than good health.

■ I. The Superior Court properly determined that the complaint alleges facts which, if proven, would entitle the plaintiff to relief under basic principles of the law of contract and tort. The alleged breach of warranties and negligent performance of the sterilization operation are asserted to be a direct cause of Mrs. Mason's pregnancy. It follows, therefore, that the costs associated with the pregnancy and delivery would be within both the contemplation of the parties to an express or implied warranty and the range of reasonably foreseeable consequences of the negligent performance of the surgical procedure. See *Speck v. Finegold,* 497 Pa. 77, 439 A.2d 110 (1981). Thus, if the plaintiff sustains her burden of proof, she is entitled to recover all medical expenses and lost wages related to pre-natal care, delivery, and post-natal care, as well as compensation for pain and suffering incurred during the pre-natal through post-natal periods.

■ II. In addition to these costs associated with pregnancy and childbirth, the complaint seeks to recover alleged damages for emotional distress and the expenses of raising

the child until the "age of maturity." We agree with the majority of the Superior Court and the majority of jurisdictions which have considered the issue that the financial and emotional costs of raising a healthy child are not compensable.[1] In light of this Commonwealth's public policy, which recognizes the paramount importance of the family to society, we conclude that the benefits of joy, companionship, and affection which a normal, healthy child can provide must be deemed as a matter of law to outweigh the costs of raising that child. As was stated twenty-five years ago by the Court of Common Pleas of Lycoming County,

> "Many people would be willing to support this child were they given the right of custody and adoption, but according to plaintiff's statement, plaintiff does not want such. He wants to have the child and wants the doctor to support it. In our opinion to allow such damages would be against public policy."

*Shaheen v. Knight,* 11 D. & C.2d 41, 46 (1957).[2]

Order of the Superior Court vacated, and record remanded to the Court of Common Pleas of Allegheny County for proceedings consistent with this opinion.[*]

[1.] One member of the Superior Court would have permitted recovery for emotional distress and three members would have permitted recovery of child-raising expenses if these expenses were found to exceed the "benefits" of joy and companionship which the child would provide. See Restatement (Second) of Torts § 920 (1979).

[2.] Our holding is in accord with recent decisions in the appellate courts of Alabama, Arkansas, Delaware, Florida, Kentucky, New Hampshire, New York, Texas, Wisconsin, and Wyoming. See *Boone v. Mullendore,* 416 So.2d 718 (Ala.1982); *Wilbur v. Kerr,* 628 S.W.2d 568 (Ark.1982); *Coleman v. Garrison,* 349 A.2d 8 (Del.1975); *Public Health Trust v. Brown,* 388 So.2d 1084 (Fla.App.1980); *Maggard v. McKelvey,* 627 S.W.2d 44 (Ky.App.1982); *Kingsbury v. Smith,* 442 A.2d 1003 (N.H.1982); *Sala v. Tomlinson,* 87 A.D.2d 670, 448 N.Y. S.2d 830 (1982); *Terrell v. Garcia,* 496 S.W.2d 124 (Tex.Civ.App. 1973), cert. denied, 415 U.S. 927, 94 S.Ct. 1434, 39 L.Ed.2d 484 (1974); *Rieck v. Medical Protective Co.,* 64 Wis.2d 514, 219 N.W.2d 242 (1974); *Beardsley v. Wierdsma,* 650 P.2d 288 (Wyo.1982). See generally Annot., 83 A.L.R.3d 15 (1978).

[*] Five members of the Court agree with Part I of this opinion; Mr. Justice NIX and Mr. Justice McDERMOTT dissent. Four members

O'BRIEN, C.J., files a concurring and dissenting opinion in which FLAHERTY, J., joins.

NIX, J., files a concurring and dissenting opinion, in which McDERMOTT, J., joins.

LARSEN, J., files a concurring and dissenting opinion.

O'BRIEN, Chief Justice, concurring and dissenting.

I agree with the opinion of Mr. Justice Roberts that plaintiff has sufficiently set forth causes of action in trespass and assumpsit. As stated in *Cockrum v. Baumgartner,* 99 Ill.App.3d 271, 54 Ill.Dec. 751, 425 N.E.2d 968 (1981), the instant action is "not an aspersion upon the value of the child's life. It is instead a recognition of the importance of the parent's fundamental right to control their [sic] reproductivity." *Id.* 99 Ill.App.3d at 273, 54 Ill.Dec. at 753, 425 N.E.2d at 970. *Accord Ochs v. Borrelli,* 187 Conn. 253, 445 A.2d 883 (1982); *Troppi v. Scarf,* 31 Mich.App. 240, 187 N.W.2d 511 (1971); *Sherlock v. Stillwater Clinic,* 260 N.W.2d 169 (Minn.1977).

However, I disagree that the benefits of joy, companionship and affection which a healthy, unplanned child may provide outweigh, *as a matter of law,* the cost of raising such a child. I see no justifiable reason to differentiate between the present case and our decision in *Speck v. Finegold,* 497 Pa. 77, 439 A.2d 110 (1981), allowing the plaintiffs to seek damages for the cost of raising their genetically defective child. Any other result is inconsistent. It is not the relative health of the child, but is instead the alleged negligence of the physician, that gives rise to all damages that are foreseeable. "The law of liability should not turn on ... fortuitous considerations." *Howard v. Lecher,* 42 N.Y.2d 109, 113, 397 N.Y.S.2d 363, 365, 366 N.E.2d 64, 66 (1977).

What of a mildly defective child? The child in *Ochs v. Borrelli, supra,* was born with a mild orthopedic defect

of the Court agree with Part II of this opinion, Mr. Chief Justice O'BRIEN, Mr. Justice LARSEN, and Mr. Justice FLAHERTY dissent.

following a negligently performed tubal ligation. The child's orthopedic problems were described as forefoot adductus (which was corrected by casts and exercise) and flat foot, a problem that was not corrected. A jury calculated damages for direct medical expenses incident to the pregnancy and birth, pain and suffering incident to the failed sterilization, medical expenses necessitated by the orthopedic disability and the cost of raising the child to her majority, reduced by the value of the benefits conferred on the parents by having and raising the child. Utilizing the position of Mr. Justice Roberts, who would not permit Mrs. Mason to seek child rearing expenses simply because she had the great fortune of bearing a healthy child following the allegedly negligent tubal ligation, where would a child such as borne by Mrs. Ochs fit into the Pennsylvania scheme? And what of a child whose condition, although severe, was correctable, but at some years in the future? These are all factors that would, and should, be weighed and considered by the trier of fact.

I agree with Superior Court Judges Spaeth, Cavanaugh and Brosky[1] who concluded that Mrs. Mason should be permitted to seek damages for the cost of rearing her child, offset by the value of the child's aid, comfort and society.

The benefit rule provides,

1. Contrary to Mr. Justice Roberts' assertion that a *majority* of the Superior Court concluded that the financial and emotional costs of raising a healthy child are not compensable, the Superior Court was equally divided on this issue. Judge Price dissented and claimed that the plaintiff's complaint did not set forth causes of action for breach of contract and the negligent performance of the tubal ligation. He therefore did not reach the issue of the appropriate measure of damages. The other six Superior Court judges were equally divided on the issue of whether or not plaintiff could seek damages for the support and maintenance of the child. Judges Spaeth, Cavanaugh and Brosky would permit Mrs. Mason to seek damages for the cost of rearing the child, offset by the value of the child's aid, comfort and society. President Judge Cercone and Judges Hester and Hoffman would have denied plaintiff's right to seek these damages.

I also disagree with Mr. Justice Roberts' claim that a majority of jurisdictions which have considered this issue have concluded that the costs of raising a healthy child are not compensable. My research indicates, instead, that no discernible majority position has emerged.

"Where the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred upon the plaintiff a special benefit to the interest which was harmed, the value of the benefit conferred is considered in mitigation of damages, where this is equitable."

Restatement (Second) of Torts, § 920 (1965). *See also* D. Dobbs, Remedies § 3.6 (1973); C. McCormick, Damages § 40 (1935). Thus, "[w]hen a defendant's tortious actions benefit as well as injure plaintiff, a computation of damages [requires] that the award for the injury be reduced by the value of the benefit." Comment, *Liability for Failure of Birth Control Methods,* 76 Colum.L.Rev. 1187, 1197–98 (1976).

Mr. Justice Roberts has adopted defendants' assertion that this Commonwealth's public policy precludes plaintiff's right to seek recovery of child-rearing expenses. This argument has been made in virtually every jurisdiction in which the courts have been confronted with negligent sterilization claims. An intermediate appellate court in Illinois issued the most succinct and sensitive response.[2]

"While we agree that most parents hold the sentiment that the birth of a healthy albeit unplanned child is always a benefit, we are not inclined to raise this sentiment to the level of public policy. The uniqueness of life is in no way denigrated by a couple's choice not to have a child. Neither the individual nor society as a whole is harmed by the exercise of this choice. Recognizing this, the right to limit procreation through contraception and, to a limited extent abortion, has been held to come within a constitutionally protected 'zone of privacy.' (*Griswold v. Connecticut* (1965), 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510; *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147.)

**2.** Other responses to this argument worth noting may be found in *Custodio v. Bauer,* 251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967); *Ochs v. Borrelli, supra; Troppi v. Scarf, supra; Sherlock v. Stillwater Clinic, supra; Rivera v. State,* 94 Misc.2d 157, 404 N.Y.S.2d 950 (1978); *Bowman v. Davis,* 48 Ohio St.2d 41, 356 N.E.2d 496 (1976); *See also Comment, Pregnancy After Sterilization: Causes of Action for Parent and Child,* 12 J.Fam.L. 635 (1972–73).

Regardless of motivation, a couple has the right to determine whether they will have a child. That right is legally protectible and need not be justified or explained.... (See Comment, Wrongful Life: Birth Control Spawns a Tort, 13 John Marshall L.Rev. 401, 420 (1980).) We cannot endorse a view that effectively nullifies this right by providing that its violation results in no injury."

*Cockrum v. Baumgartner, supra* 99 Ill.App.3d at 273, 54 Ill.Dec. at 753, 425 N.E.2d at 970 (1981).

In his dissenting opinion in *Wilbur v. Kerr,* 275 Ark. 239, 628 S.W.2d 568 (1982), Justice Dudley clearly emphasizes why public policy should not be invoked in a case such as is now before us, relying primarily upon the lack of a standard by which courts determine when to apply the doctrine and the lack of a meaningful definition by which courts determine what constitutes public policy. He concludes,

"The expense of raising an unwanted and healthy child should not be considered as a matter of public policy when we will find that the same public policy allows us to hold that the parents of a deformed or diseased child are able to recover. This is inconsistent, see *Mason v. Western Pennsylvania Hospital,* 286 Pa.Super. 354, 428 A.2d 1366 (1980), and demonstrates the consequence of invoking public policy without standards."

*Id.* 275 Ark. at ——, 628 S.W.2d at 572.

Mrs. Mason should be compensated for all damages proximately caused by defendant's negligence, assuming such negligence is proven at trial. I would hold that she may seek damages for the cost of raising the wrongfully conceived child until its majority, offset by the value of the child's aid, comfort and society. The application of the benefit rule will take into account the facts of each case and provide flexibility in the calculation of damages. "[T]he 'value' of parenthood will vary according to the individual's reasons for wanting the sterilization. Thus, fairness to both parties dictates that these reasons be considered in determining the benefits of parenthood." Note, *Wrongful Con-*

*ception: Who Pays for Bringing Up Baby,* 47 Fordham L.Rev. 418, 432 (1978) [footnote omitted].

I would similarly conclude that Mrs. Mason should be permitted to seek damages for emotional distress incident to the birth and raising of her third child. This Court considered the question of emotional distress damages in *Speck v. Finegold, supra.* Mr. Justice Flaherty, joined by Messrs. Justice Larsen and Kauffman and this writer, concluded that since plaintiffs' alleged injury, their mental distress at having to be the parents of a defective, diseased child, was foreseeable, mental distress damages could be recovered, if proven at trial. Mr. Justice Roberts, joined by this writer, asserted that emotional distress was a foreseeable risk within the contemplation of the parties which was properly chargeable to the defendants.

A majority of the Superior Court in the present case agreed that Mrs. Mason could not seek damages for emotional distress incident to the birth and raising of her third child. The majority based this decision on the ground that "the emotional anguish that [the parents] suffer may be a normal uncomprehensible [sic] price one pays for being a parent." *Mason v. Western Pennsylvania Hospital,. supra,* 286 Pa. Superior at 364, 428 A.2d at 1371, quoting, *Speck v. Finegold, supra.*

> "In this case, as in so many others, the court has sought to place the . . . plaintiffs in the position of normal parents in spite of the fact that they have taken every reasonable precaution to avoid parenthood. This reasoning appears all the more faulty when one considers that courts allow the plaintiff to recover for the pain of pregnancy and the cost of child-rearing, which are also normal liabilities of parenthood. Allowing an emotional distress recovery would not give the plaintiffs 'a societal advantage over other parents,' as the Mason court feared it would. Instead, the award would compensate the plaintiffs as fully as possible for the burden of *unwilling* parenthood that the defendant has forced them to bear.
> " . . . The fact that normal parents would regard the healthy child as a blessing is small comfort to the . . .

plaintiffs, who have sought to avoid that blessing. The extensiveness of the damages in relation to the physician's culpability does not justify leaving all the financial hardship with the . . . plaintiffs and their unplanned child." Note, *Judicial Limitations on Damages Recoverable for the Wrongful Birth of a Healthy Infant,* 68 Va.L.Rev. 1311, 1322 (1982) (emphasis in original).

It is well established in Pennsylvania that an injured party may recover not only for actual physical injury sustained, but also for the concomitant mental and emotional suffering. *Knaub v. Gotwalt,* 422 Pa. 267, 220 A.2d 646 (1966); *Cucinotti v. Ortmann,* 399 Pa. 26, 159 A.2d 216 (1960); *Ewing v. Pgh.C. & St.L.Ry.Co.,* 147 Pa. 40, 23 A. 340 (1892). Indeed, an individual may recover for the emotional and mental distress resulting from another's negligence where there has been no physical impact. *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970).

In light of the above discussion, and in light of *Speck v. Finegold, supra,* I would hold that emotional distress damages, as they are within the natural and probable consequences of defendant's allegedly wrongful acts, are recoverable if proven at trial. As with child-rearing expenses, defendants should be permitted to introduce evidence that the damages are outweighed by the benefits of joy, companionship and affection which a child can provide. By applying the benefit rule, the trier of fact will be able to sort out the spurious claims from those that can be substantiated by the quality and genuineness of proof, aided by medical testimony and the adversary nature of the trial court.

FLAHERTY, J., joins in this opinion.

NIX, Justice, concurring and dissenting.

I.

I agree that appellants have alleged a cause of action *ex contractu* for breach of express warranties. *Mason v. Western Pennsylvania Hospital,* 286 Pa.Superior Ct. 354, 359, 428 A.2d 1366, 1368 (1981). There is no question that a physi-

cian, as well as any other supplier of services, may expressly warrant a specific result.[1] The first and third counts of the complaint set forth allegations sufficient to withstand demurrers. However, contract damages awardable in this state do not include damages for mental suffering.

I am mindful that the Restatement (Second) of Contracts § 353 (1979) states:

§ 353. Loss Due to Emotional Disturbance

Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.

This position has not been adopted in Pennsylvania. We did indicate in *D'Ambrosio v. Pa. Nat. Mut. Cas. Ins. Co.,* 494 Pa. 501, 509 n. 5, 431 A.2d 966, 970 n. 5 (1981) that the possibility exists that certain circumstances may warrant a recovery for emotional distress under an assumpsit claim. However, up to this point no such circumstances have been found present to warrant such an application. Nor do I believe the instant case provides such a situation.

The facts alleged here are not such as to support a conclusion that serious emotional disturbance is a particularly likely result, unless we accept the proposition that a reasonable person is likely to become seriously emotionally disturbed by the foiling of his or her choice concerning procreation. This I will not do.

## II.

I remain unalterably opposed to the recognition of an action in negligence for the birth of an unwanted child. *Speck v. Finegold,* 497 Pa. 77, 93, 439 A.2d 110, 119 (1981) (Nix, J. dissenting). Despite the majority's euphemistic contortions, the issue still remains whether the inadvertent or careless failure to prevent birth creates a "compensable

---

1. While it troubles me to conclude that an express promise to prevent life would be enforceable under our law, I nevertheless believe we are constrained to do so under the teaching of *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

injury." The Court's attempt to obfuscate the true issue in *Speck* by focusing upon the genetic defect of the infant in that case is starkly exposed by the facts of this case.

In dissent in *Speck* I argued that we were there being requested to recognize a new tort which involved a public policy decision properly made by the legislature. I note today that Mr. Justice Roberts has acknowledged that the public policy of this Commonwealth "recognizes the paramount importance of the family to society." It is incomprehensible to me in view of that realization how that fact could be ignored in establishing a cause of action for the recovery of "all medical expenses and lost wages related to pre-natal care, delivery and post-natal care, as well as compensation for pain and suffering incurred during the pre-natal through post-natal periods."

I reemphasize that I acknowledge the limited right of privacy recognized in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) but I do not accept the *ipse dixit* position of the existence of a right to control reproductivity which requires the state to provide civil recourse when a private party fails to intercept the natural process of birth.

### III.

Accordingly, I would sustain the preliminary objections dismissing the counts sounding in tort and limit recovery under the assumpsit counts to the costs of pre-natal care and delivery. I would reject any damages for the rearing of the child and any emotional distress associated with either the birth or raising of the child.

McDERMOTT, J., joins in this concurring and dissenting opinion.

LARSEN, Justice, concurring and dissenting.

I join in the majority's conclusion that Mrs. Mason has stated causes of action for both breach of warranty and negligence, and that, subject to proof, she may recover damages for all her medical expenses, mental anguish and

pain and suffering resulting from pregnancy and delivery. I also agree with the concurring and dissenting opinion of Chief Justice O'Brien that "Mrs. Mason should be permitted to seek damages for emotional distress incident to the birth and raising of her third child" and that "the benefits of joy, companionship and affection which a healthy, unplanned child may provide [do not] outweigh, *as a matter of law,* the cost of raising such a child." However, I would go even further and hold that Mrs. Mason may recover the entire cost of raising her unplanned child to the age of majority; I disagree with any application of the "benefit rule" to the computation of damages for the support and maintenance of Mrs. Mason's child.[1]

> The cardinal principle of damages in Anglo-American Law is that of *compensation* for the injury caused to plaintiff by defendant's breach of duty.
>
> .    .    .    .    .
>
> ... The primary notion is that of repairing plaintiff's injury or of making him whole as nearly as that may be done by an award of money.

F.V. Harper & F. James, Jr., The Law of Torts, at 1299–1301 (1956) (emphasis in original; footnotes omitted).

Application of the "benefit rule," however, undermines this principle. Feeding, clothing and educating an unplanned child entails a certain amount of expense, and it is this expense for which parents must be compensated in order to be made whole. Whatever those expenses are determined to be, they are simply not reduced by the satisfaction, love, joy and pride which an unplanned child may provide his parents. The "benefit rule" would reduce the damages awarded to parents of children who possess these

1. I agree with the opinion of Chief Justice O'Brien that defendants should be able to deduct the emotional benefits of child rearing from the emotional trauma of raising a child. However, I do not agree that the "benefit rule" should be applied so as to allow the deduction of benefits received from the child twice—once from the damages for child rearing trauma, and again from the actual costs of child rearing—because this would provide a windfall to the tortfeasor.

endearing abilities, thus preventing the parents from being fully compensated and made whole.

Another objective of tort law is the deterrence of future negligence. The Law of Torts, *supra* at 743. The application of the "benefit rule" also undermines this goal because it would reduce the damages assessed against a tortfeasor without any regard for the extent of tortfeasor's negligence.

A final objective of tort law is "avoiding discouragement of desirable activity." *Id.* This objective is also undermined by the application of the "benefit rule" in cases such as this.

Society is disserved by a rule which "punishes" those parents who make the effort to raise an unplanned child and who give that child the love and emotional, social and economic support which will help that child become a person capable of returning love and care to his parents, while "rewarding" those parents who can prove to a jury that they cannot or do not provide their children with the love and emotional, social and economic support they need, thus producing children who themselves cannot or do not return any of these intangible benefits to their parents. Society favors and supports those families in which children—including those whose births were unplanned—receive from their parents the love and support they need to grow and develop into loving and supportive adults, yet with the application of the "benefit rule," "a great anomaly becomes apparent; the more loving the parent, the smaller the damage award and the more the entire family will suffer as scarce economic resources are spread over a greater number of family members." Kashi, *The Case of the Unwanted Blessing: Wrongful Life,* 31 U. Miami L.Rev. 1409, 1417 (1977).

The "benefit rule" works an injustice upon the innocent parents of children conceived after a negligently performed sterilization. I would, therefore, permit the parents of such children to recover the full cost of raising their unplanned child to the age of majority.