MARY A. BRITTON
ROBERT L. BRITTON
*vs.*
JOSEPH A. DUBE ET AL.

Cumberland.   Opinion, December 31, 1958.

*Basil A. Latty,* for plaintiffs.

*Robinson, Richardson & Leddy,* for defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ.   SIDDALL, J., did not sit.

WILLIAMSON, C. J.   The plaintiff Mrs. Britton, a passenger in a car driven by her daughter Mrs. Libby, was injured in a collision of the Libby car and a car driven by the defendant Joseph Dube.  Actions brought by Mrs. Britton and by her husband Robert for consequential damage against Mrs. Libby and Mr. Dube as joint tort feasors were tried together and resulted in defendants' verdicts in favor of Mrs. Libby and plaintiffs' verdicts against Mr. Dube in the amount of $7220 for Mrs. Britton and $3363.52 for her husband.  For convenience unless otherwise indicated we will refer to Mrs. Britton as the plaintiff.

The cases are before us on motions for new trial.  In the plaintiff's case liability is the issue, there being no claim of error in assessing damages.  In the husband's case the issues are liability, which will follow the decision in the wife's case, and excessive damages.

Under the familiar rule we take the evidence with all proper inferences drawn therefrom in the light most favorable to the jury's findings and the verdict stands unless manifestly wrong.  *Gregory* v. *James,* 153 Me. 453, 140 A. (2nd) 725; *Stinson* v. *Bridges, Admr.,* 152 Me. 306, 129 A. (2nd) 203.

From our review of the record we are satisfied the jury could properly have found the facts as stated herein.  It will serve no useful purpose to review the record in detail.

The Libby and Dube cars collided on a clear May afternoon in Freeport on Beech Hill Road near its junction with Route 136.  The accident occurred when Mrs. Libby, who had been travelling on Route 136 easterly or from the direction of Freeport, turned left into Beech Hill Road.  The plaintiff and her two year old granddaughter were riding on the front seat with Mrs. Libby.  Mr. Dube accompanied by Mrs. Dube was travelling southerly on Beech Hill Road.

The junction of Beech Hill Road and Route 136 is in the form of a "Y," with branches entering the north side of Route 136 on the east and west sides of an "island" or "heater piece." In the "island" there was a stop sign controlling traffic on Beech Hill Road approaching Route 136 and a telephone pole. At the scene of the accident in the westerly branch of the "Y" near the stop sign, Beech Hill Road had a tar surface 14 feet 5 inches in width plus a five foot strip of gravel between the easterly edge of the tar surface and the grass on the "island."

After the accident the Dube car was across the tar surface with the left front fender about twenty inches from the easterly edge, that is to say, on Mr. Dube's left side of the tar surface. The left front fender and left side of the car were damaged.

The Libby car after the collision continued on to the "island" and struck the telephone pole. There were brake marks of the Libby car made just before the collision which indicated the car was then heading easterly or across the road toward the "island."

The junction is quite blind at the season when the accident occurred. Mr. Dube could see well into Route 136, but Mrs. Libby would have had difficulty in seeing any depth into Beech Hill Road until almost upon it.

Mrs. Libby first saw the Dube car two or three car lengths away. She places the Dube car in motion and in part on Dube's left side of the way as she turned into the road. She testified:

"Q    Now the two cars, the one you were driving and the Dube car, did collide, is that correct?
 A    Yes. I went to make my intersection turn. At first I saw him coming I thought he was going towards Freeport and I applied my brakes to give him time to get back on his side of the

road. I saw he wasn't and I swung to get out
of his way and his front left-hand wheel hit
over my left-hand wheel."

In this description of the accident she is supported by her
mother, the plaintiff. Just before the accident Mrs. Libby
took her hands from the wheel and sought to reach and pro-
tect her child.

Mr. Dube, for his part, says in substance that his car
was stopped wholly on his right-hand side of the center line
of the Beech Hill Road, and that his car was pushed toward
the east side of the road in the collision. Mrs. Dube confirms
this testimony and says that Mrs. Libby "cut the corner."

We cannot say the jury erred in finding for the plaintiff
against Mr. Dube. The evidence of Mrs. Britton and Mrs.
Libby is not unreasonable, nor is it inconsistent with the
known physical facts. Obviously if each driver had kept
on his right-hand side of the center line of Beech Hill Road,
the cars would have passed without incident. The jury, find-
ing that Mr. Dube was "straddling," that is, was in some
part at least on his left-hand side of the center of Beech Hill
Road, could properly conclude that the defendant was negli-
gent.

On the issue of contributory negligence, the record in our
view presents a typical jury question.

The remaining question is whether the damages awarded
the husband are excessive. The verdict of $3363.52 may be
divided in two parts: first, an amount not exceeding $600
for medical and other proper expenses unquestioned by the
defendant; second, $2700 roughly for loss of consortium.

Mrs. Britton, aged sixty, had a broken leg and other in-
juries. She was hospitalized for a week and her leg was in
a cast for six weeks. She must use a cane. Her ability to do
housework has been severely limited. Her physician testified

she suffered a 40-50% permanent disability of the left foot and it would probably get worse. Her husband cared for his wife at home for six weeks after the accident. He testified:

"Q What did she do on the farm?

A She did her housework. I would, I did most of the work outdoors. She would make butter, do the churning, that sort of stuff.

Q Since she was injured, has she done anything towards, in the operation of the farm?

A No, none whatsoever."

Mrs. Britton describes her condition in these words:

"Q How long was it after you received those injuries before you could do anything at all?

A I didn't do anything all that winter. I didn't do anything that winter. In fact, I haven't cleaned house for two years and can't do it now.

Q Did you before this accident ever have any physical ailments or impairments.

A No, sir."

The daughter and son-in-law confirm the change in Mrs. Britton's ability to work about the home.

We have then the picture of a wife active on the family farm who must now curtail in large measure the performance of her household duties. The plaintiff husband is entitled to recover compensation for the loss to him of such services to time of trial and in the future. The plaintiff does not offer evidence of future medical or other expense in addition to the $600 mentioned above, and the only loss of consortium lies in the loss of services. There is no evidence that the plaintiff lost the society or companionship of his wife, except for the limited period of total disability. It is in the *loss of services* to which the husband is entitled in his home that the husband makes a valid claim.

The husband performed services for six weeks for his wife. He cannot recover his loss of wages to be sure, but he is entitled to the fair value of his work as a nurse or in caring for his wife.

The jury need not base the findings of value for the services rendered by the husband or the services of his wife lost by reason of the injuries on particular evidence of value. The award, however, must not include items recoverable by the wife in her action. He recovers compensation for *his* loss, not for the loss or damage suffered by his wife.

> "Being a married woman and living with her husband, the plaintiff (the wife) is not entitled to recover for loss of ability to do domestic labor in their home, nor for the expenses in caring for her, surgically and otherwise. Under the marital relation, the labor in the house belonged to her husband. Her inability to perform that labor is his loss. And on the other hand, as the law imposes on him the duty of caring for her in sickness as well as in health, the burden of the expenses for medical and surgical treatment and for nursing falls upon him and not upon her, unless she has expressly undertaken to be personally responsible for them." *Felker* v. *Railway & Electric Company,* 112 Me. 255, 256, 91 A. 980.

See also *McCarthy* v. *McKechnie,* 152 Me. 420, 132 A. (2nd) 437; *Fossett et al.* v. *Durant,* 150 Me. 413, 113 A. (2nd) 620; *Marr* v. *Hicks,* 136 Me. 33, 1 A. (2nd) 271; *Abbott et al.* v. *Zirpolo,* 132 Me. 368, 171 A. 251; *Rice* v. *Keene,* 129 Me. 489, 151 A. 199; *Wood* v. *M. C. R. R. Co.,* 101 Me. 469, 64 A. 833; *Hooper* v. *Haskell,* 56 Me. 251; Restatement, Torts § 693; 10 Blashfield, Cyclopedia of Automobile Law and Practice § 6477; 27 Am. Jur., *Husband and Wife,* § 501 *et seq.;* 41 C. J. S., *Husband and Wife,* § 401 (c); 4 Shearman and Redfield on Negligence, § 860.

The award of $2700 is large, but in light of the circumstances and in particular of the severe and lasting injuries to the wife which may fairly be found to reduce forever and substantially her ability to perform her usual duties about the home, we cannot say the verdict is excessive.

The entry in each case will be

*Motion for new trial denied.*