Roxanne MACOMBER, et al.

v.

Carter F. DILLMAN, et al.

Supreme Judicial Court of Maine.

Argued Nov. 12, 1985.

Decided Feb. 27, 1986.

Murray, Plumb & Murray, Jane B. Hart-well, (orally), E. Stephen Murray, Portland, for plaintiffs.

Hunt, Thompson & Bowie, James M. Bowie (orally), Portland, for Carter F. Dillman.

Preti, Flaherty & Beliveau, Arlyn H. Weeks (orally), Christopher D. Nyhan, Portland, for Webber Hosp. Ass'n.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, GLASSMAN, and SCOLNIK, JJ.

GLASSMAN, Justice.

Pursuant to M.R.Civ.P. 72(c), this case was reported by the Superior Court, York County, from its order denying the defendants' motion for dismissal of the plaintiffs' complaint for failure to state a claim against the defendants for which relief could be granted, and setting forth the

scope of damages recoverable by the plaintiffs should they prevail in their action. For the reasons hereinafter set forth, we modify the order as to damages, and, as so modified, affirm the order of the Superior Court.

### I.

In April of 1984, the plaintiffs, Roxanne and Steven Macomber, filed a complaint against the defendants, Carter F. Dillman and the Webber Hospital Association. The complaint alleged, *inter alia*, that as a proximate result of the defendants' negligent and careless failure to comply with the standard of care of medical practice in the performance of a tubal ligation on Roxanne for the purpose of her permanent sterilization, Roxanne was not permanently sterilized and had conceived and given birth to a child, Mazie. Although the plaintiffs did not allege in their complaint that Mazie is a healthy, normal child, they did not allege otherwise, and the parties have agreed to these facts. Plaintiffs sought damages from defendants "including, but not limited to, the cost of raising and educating Mazie May Macomber, the medical and other expenses of the pregnancy and childbirth, the medical and other expenses of a subsequent hysterectomy for purposes of sterilization, lost wages, loss of consortium, the medical and other expenses of the unsuccessful tubal ligation, permanent physical impairment to Roxanne Macomber resulting from bearing Mazie May, her sixth child, and physical and mental pain and suffering resulting [therefrom]."

Defendants filed motions for dismissal or summary judgment on the grounds that the plaintiffs by their complaint failed to state a claim for which relief could be granted and could not recover damages for the cost of rearing and educating a healthy, normal child. After hearing, the Superior Court entered its order denying the defendants' motions and adopting the analysis that should the plaintiffs prevail they would be entitled to recover "all reasonable, foreseeable, and proximately caused damages, including the expenses of child rearing." The court refused to rule on whether damages so recoverable by plaintiffs "should be offset by benefits" of parenthood.

On a joint motion of the parties, the Superior Court reported the case to this court thereby posing the following questions of law: (1) Did the Superior Court by its order properly deny the defendants' motion to dismiss the plaintiffs' complaint for failure to state a claim against the defendants for which relief can be granted? (2) Did the Superior Court by its order properly set forth the damages that the plaintiffs could recover should they prevail in their action against the defendants?

### II.

We first address the question of whether the plaintiffs have by their complaint stated a claim against the defendants. Contrary to the defendants' contention, the plaintiffs' action does not represent a new cause of action in the state of Maine. "Since the early days of the common law a cause of action in tort has been recognized to exist when the negligence of one person is the proximate cause of damage to another person." *MacDonald v. MacDonald*, 412 A.2d 71, 75 (Me.1980). "[T]o state a claim upon which relief can be granted, a complaint must aver either the necessary elements of a cause of action or facts which would entitle the plaintiff to relief upon some theory." *E.N. Nason, Inc. v. Land-Ho Development*, 403 A.2d 1173, 1177 (Me.1979). When a plaintiff claims he has suffered a personal injury as the result of medical mistreatment, his remedy lies in a complaint for negligence. *Woolley v. Henderson*, 418 A.2d 1123 (Me. 1980). The necessary elements of a cause of action for negligence are a duty owed, a breach of that duty proximately causing the plaintiff's injuries and resulting damages. *Wing v. Morse*, 300 A.2d 491 (Me. 1973). All well-pleaded material allegations of a complaint are taken as admitted for the purpose of a Rule 12(b)(6) motion

for failure to state a claim for which relief may be granted. *Haskell v. Phinney,* 460 A.2d 1354 (Me.1983); 1 Field, McKusick & Wroth, *Maine Civil Practice* § 12.11 at 248 (1970). Applying these principles to the allegations in the plaintiffs' complaint, it is clear that the necessary elements of a cause of action in negligence have been set forth against the defendants.

## III.

We next consider whether the Superior Court correctly established the scope of recoverable damages. We are aware that the courts which have considered this type of case have not reached a consensus as to damages, if any, that may be recoverable. *See Kingsbury v. Smith,* 122 N.H. 237, 442 A.2d 1003 (1982), for a summary of four different legal positions in the body of developing law on this issue.

■ We hold for reasons of public policy that a parent cannot be said to have been damaged or injured by the birth and rearing of a healthy, normal child. Accordingly, we limit the recovery of damages, where applicable, to the hospital and medical expenses incurred for the sterilization procedures and pregnancy, the pain and suffering connected with the pregnancy and the loss of earnings by the mother during that time. Our ruling today is limited to the facts of this case, involving a failed sterilization procedure resulting in the birth of a healthy, normal child.

We also must address whether the plaintiff, Steven Macomber, may recover for loss of consortium of his wife, Roxanne. For centuries courts have recognized a husband's right to recover damages for the loss of consortium when a tortious injury to his wife detrimentally affects the spousal relationship. *See Britton v. Dube, et al.,* 154 Me. 319, 147 A.2d 452 (1958) (under a claim for loss of consortium husband was allowed to recover damages for loss of services of wife); *see also* Note, *Who Should Recover For Loss of Consortium,* 35 Me.L.Rev. 295 (1983); *Restatement (Second) of Torts* § 905, comment f (1977).

Because his wife's cause of action is for negligence, Steven Macomber may recover proven damages for loss of consortium.

The entry is:

The order of the Superior Court is modified to limit the scope of recoverable damages, and as so modified, affirmed. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

McKUSICK, NICHOLS, and ROBERTS, JJ., concurring.

SCOLNIK, Justice, concurring in part and dissenting in part,

Although I concur that a cause of action exists for medical malpractice in the performance of a tubal ligation, I am unable to agree with the Court's judicially imposed limitation on the damages that are recoverable. The Court reasons that in no circumstances can a parent be said to have been harmed by the birth and rearing of a healthy, normal child. This rationale, however, is not only plainly inconsistent with the Court's recognition of a cause of action but also totally ignores the fact that many individuals undergo sterilization for the very purpose of avoiding such a birth. Moreover, the Court's opinion is an unwarranted departure from the fundamental principle of tort law that once a breach of duty has been established, the tortfeasor is liable for all foreseeable damages that proximately result from his acts. I dissent because, in my view, the jury should be permitted to consider awarding damages for child rearing costs.

By finding that a parent is not harmed by the birth of a healthy child, the Court's opinion is logically inconsistent. In the first part of its opinion, the Court applies traditional tort principles to recognize a cause of action for negligence resulting in an unwanted conception and subsequent birth of a normal, healthy child. Although the opinion is noticeably silent as to what the required harm is to support the cause of action, *see Rubin v. Matthews Int'l*

*Corp.*, 503 A.2d 694, 699 (Me.1986), the Court has in effect concluded that the birth of a normal child is recognized as an injury that is directly attributable to the health-care provider's negligence. In the second part of its opinion, however, the Court states that based on unarticulated reasons of public policy, the birth of a normal, healthy child cannot be said to constitute an injury to the parents. As a result, the Court limits the damages that a parent can recover to the hospital and medical expenses incurred for the sterilization procedure and the pregnancy, the pain and suffering connected with the pregnancy and the loss of earnings sustained by the mother during that time. If, however, the birth of a child does not constitute an injury, no basis exists for any award of damages. Damages for "pain and suffering" and medical expenses incidental to child birth cannot be recoverable if the birth itself is not an injury. Similarly, if the parent is to be compensated for the loss of earnings that result from the pregnancy, should she not equally be compensated for the identical loss following the birth of the child? The Court's opinion fails to reconcile these obvious inconsistencies.

Not only is the Court's opinion internally inconsistent, but its stated rationale to support an artificial limitation on the scope of recoverable damages ignores reality. To hold that a parent cannot be said to have been damaged or injured by the birth and rearing of a normal, healthy child is plainly to overlook the fact that many married couples, such as the plaintiffs, engage in contraceptive practices and undergo sterilization operations for the very purpose of avoiding the birth of child. Many of these couples resort to such conception avoidance measures because, in their particular circumstances, the physical or financial hardships in raising another child are too burdensome. Far from supporting the view that the birth of a child is in all situations a benefit, the social reality is that, for many, an unplanned and unwanted child can be a clear detriment. *See, e.g., Troppi v. Scarf,* 31 Mich.App. 240, 253, 187 N.W.2d 511,

517, *leave to appeal denied,* 385 Mich. 753 (1971); *see also Hartke v. McKelway,* 707 F.2d 1544, 1552 (D.C.Cir.) ("[W]hen a couple has chosen not to have children, or not to have any more children, the suggestion arises that for them, at least, the birth of a child would not be a net benefit."), *cert. denied,* 464 U.S. 983, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983). This is not to say that there are not many benefits associated with the raising of a child. The point is that it is unrealistic universally to proclaim that the joy and the companionship a parent receives from a healthy child always outweigh the costs and difficulties of rearing that child. As one judge explained:

A couple privileged to be bringing home the combined income of a dual professional household may well be able to sustain and cherish an unexpected child. But I am not sure the child's smile would be the most memorable characteristic to an indigent couple, where the husband underwent a vasectomy or the wife underwent a sterilization procedure, not because they did not desire a child, but rather because they faced the stark realization that they could not afford to feed an additional person, much less clothe, educate and support a child when that couple had trouble supporting one another. The choice is not always giving up personal amenities in order to buy a gift for the baby; the choice may only be to stretch necessities beyond the breaking point to provide for a child that the couple had purposely set out to avoid having.

*Cockrum v. Baumgartner,* 95 Ill.2d 193, 210, 69 Ill. Dec. 168, 177, 447 N.E.2d 385, 394 (Clark, J. dissenting), *cert. denied,* 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983).

I know of no instance where we have strayed from the common law principle that a tortfeasor is liable for every foreseeable injury proximately caused by his negligent act and we should avoid doing so here. The Court states that public policy dictates the result it reaches without explaining the

source from which it was derived or the foundation on which it rests. This is not a case where change is required in the common law, without legislative help, because of a conflict between an outdated judicially crafted policy and contemporary legal philosophy. *Cf. MacDonald v. MacDonald,* 412 A.2d 71, 73–74 (Me.1980). In fact, I am sure that the Court realizes that substantial disagreement exists among the courts as to whether a parent is harmed by the birth of an unexpected child.[1] This fact coupled with the empirical reality that many individuals choose to forego parenthood for economic or other reasons demonstrates that the Court's unexplicated judicial declaration of public policy is unwarranted. As one judge explained:

I have previously admitted that I have no special capacity to intuit, and am possessed of no extensive empirical evidence from which I can infer, the manifest will of the people. The majority, I submit, has failed to observe the caveat that public policy " .... is a very unruly horse, and when once you get astride it,

you never know where it will carry you. It may lead you from the sound law." *Public Health Trust v. Brown,* 388 So.2d 1084, 1087 (Fla.Dist.Ct.App.1980) (Pearson, J., dissenting) (quoting *Richardson v. Mellish,* 2 Bing. 229, 252 (1824)), *rev. denied* 399 So.2d 1140 (Fla.1981); *see also Wilbur v. Kerr,* 275 Ark. 239, 245, 628 S.W.2d 568, 572 (1982) (Dudley J., dissenting) ("I would not invoke the doctrine of public policy when there is no logical sense of conscience. While, in this case, I find many good policy reasons to support the view of the majority I find an equal number of policy reasons against that view. Therefore, I would not invoke the doctrine, instead, I would follow the common law."); *Beardsley v. Wierdsma,* 650 P.2d 288, 293 (Wyo.1982) (Rose, C.J., specially concurring) ("The fact that this particular claim involves some moralistic and social overtones having to do with contraception and childbirth should not be permitted to become the handmaiden for the destruction of our established notions of tort law.").

In my view, it is the duty of this Court to follow public policy, not to formulate it,

1. A minority of courts have not departed from common law principles and allowed the recovery of child rearing expenses offset by the beneficial value the parents will receive from having a normal, healthy child. *See, e.g., University of Arizona Health Sciences Center v. Superior Court,* 136 Ariz. 579, 667 P.2d 1294 (1983) (en banc); *Stills v. Gratton,* 55 Cal.App.3d 698, 127 Cal.Rptr. 652 (1976); *Ochs v. Borrelli,* 187 Conn. 253, 445 A.2d 883 (1982); *Jones v. Malinowski,* 299 Md. 257, 473 A.2d 429 (1984); *Troppi v. Scarf,* 31 Mich.App. 240, 187 N.W.2d 511, *leave to appeal denied,* 385 Mich. 753 (1971); *Sherlock v. Stillwater Clinic,* 260 N.W.2d 169 (Minn. 1977); *Bowman v. Davis,* 48 Ohio St.2d 41, 356 N.E.2d 496 (1976); *see also Hartke v. McKelway,* 707 F.2d 1544 (D.C.Cir.) *cert. denied,* 464 U.S. 983, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983).

A majority of courts, for various policy reasons, have provided for the recovery of all damages except child-rearing expenses. *See, e.g., McNeal v. United States,* 689 F.2d 1200 (4th Cir.1982) (interpreting Virginia law); *White v. United States,* 510 F.Supp. 146 (D.Kan.1981) (interpreting Georgia law); *Boone v. Mullendore,* 416 So.2d 718 (Ala.1982); *Wilbur v. Kerr,* 275 Ark. 239, 628 S.W.2d 568 (1982); *Coleman v. Garrison,* 349 A.2d 8 (Del.1975); *Flowers v. District of Columbia,* 478 A.2d 1073 (D.C.App.

1984); *Fassoulas v. Ramey,* 450 So.2d 822 (Fla. 1984) (per curiam); *Fulton-DeKalb Hosp. Auth. v. Graves,* 252 Ga. 441, 314 S.E.2d 653 (1984); *Nanke v. Napier,* 346 N.W.2d 520 (Iowa 1984); *Schork v. Huber,* 648 S.W.2d 861 (Ky.1983); *Cockrum v. Baumgartner,* 95 Ill.2d 193, 69 Ill. Dec. 168, 447 N.E.2d 385, *cert. denied,* 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983); *Kingsbury v. Smith,* 122 N.H. 237, 442 A.2d 1003 (1982); *P. v. Portadin,* 179 N.J.Super. 465, 432 A.2d 556 (1981); *O'Toole v. Greenberg,* 64 N.Y.2d 427, 488 N.Y.S.2d 143, 477 N.E.2d 445 (1985); *Mason v. Western Pennsylvania Hosp.,* 499 Pa. 484, 453 A.2d 974 (1982); *Hickman v. Myers,* 632 S.W.2d 869 (Tex.Civ.App.1982); *McKernan v. Aasheim,* 102 Wash.2d 411, 687 P.2d 850 (1984); *James G. v. Caserta,* 332 S.E.2d 872 (W.Va.1985); *Beardsley v. Wierdsma,* 650 P.2d 288 (Wyo.1982); *see also Rieck v. Medical Protective Co.,* 64 Wis.2d 514, 219 N.W.2d 242 (1974).

A common criticism of the opinions following the majority view is that they "substitute wise-sounding platitudes for any earnest and frank examination of the relevant issues involved." *Fassoulas v. Ramey,* 450 So.2d at 826 (Ehrlich, J., dissenting) (4–3 decision); *see also University of Arizona Health Sciences Center v. Superior Court,* 136 Ariz. at 583–84, 667 P.2d at 1298–99.

**816**

absent a clear expression of public opinion. Moreover, it has always been the public policy of this State to provide relief to those injured by tortfeasors and to allow for compensation for damages caused by their acts. To deprive the plaintiffs in this case of the opportunity to recover compensation for all their damages contravenes this basic policy. Any limitation on the scope of recoverable damages in such cases is best left to the Legislature where the opportunity for wide ranging debate and public participation is far greater than in the Law Court.[2] *Cf. Fein v. Permanente Medical Group,* 38 Cal.3d 137, 211 Cal. Rptr. 368, 695 P.2d 665 (1985) (en banc) (discussing California's Medical Injury Compensation Reform Act, which limits the recovery of noneconomic damages in medical malpractice cases to $250,000, *see* Cal. Civ.Code § 3333.2 (West 1986)), *cert. denied,* — U.S. ——, 106 S.Ct. 214, 88 L.Ed.2d 215 (1985).

Rather than to rely on unstated notions of public policy, the better approach to determine what damages may be recoverable is to apply traditional common-law rules. It is certainly foreseeable that a medical health professional's failure properly to perform a tubal ligation will result in the birth of an unplanned child. As a result of the tortfeasor's act, the parents, who had chosen not to have a child, find themselves unexpectedly burdened both physically and financially. They seek damages not because they do not love and desire to keep the child, but because the direct and foreseeable consequences of the health-care provider's negligence has forced burdens on them that they sought and had a right to avoid.[3]

In assessing damages for child rearing costs, I would follow those jurisdictions that have adopted the "benefit rule" of the Restatement (Second) of Torts § 920 (1979). *See supra* note 1. The benefit rule recognizes that various tangible and intangible benefits accrue to the parents of the unplanned child and therefore to prevent unjust enrichment, their benefits should be weighed by the factfinder in determining damages associated with the raising of the unexpected child. The rule provides that "[w]hen the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable." *See also* C. McCormick, *Damages* § 40 (1935). The assessment of damages, if any, should focus on the specific interests of the parents that were actually impaired by the physician's negligence. An important factor in making that determination would be the reason that sterilization was sought, whether it was economic, genetic, therapeutic or otherwise. *See Harke v. McKelway,* 707 F.2d at 1553–54; *University of Arizona Health Sciences Center v. Superior Court,* 136 Ariz. at 585,

---

**2.** It is interesting to note that the Legislature is presently considering a bill prohibiting a cause of action in "wrongful birth" and "wrongful life" cases when a healthy child is born as a result of a health-care provider's negligence. *See* L.D. 2065, § 16 (112th Legis.1986).

**3.** The choice not to procreate, as part of a person's right to privacy, is constitutionally guaranteed. *See Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). To deny child rearing costs effectively nullifies that right by providing that its violation results in no injury. For this reason, several courts have held that public policy considerations cannot be used to deny the recovery of the full measure of damages proximately caused by a physician's negligence because to do otherwise infringes on a constitutionally protected fundamental right. Moreover, these courts recognize that the parent's right to control their reproductivity, if anything, is the "public policy" that should be applied in this area of tort law. *See Hartke v. McKelway,* 707 F.2d 1544, 1552 (D.C.Cir.), *cert. denied,* 464 U.S. 983, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983); *Ochs v. Borrelli,* 187 Conn. 253, 257, 445 A.2d 883, 885 (1982); *Troppi v. Scarf,* 31 Mich.App. 240, 253, 187 N.W.2d 511, 517, *leave to appeal denied,* 385 Mich. 753 (1971); *Sherlock v. Stillwater Clinic,* 260 N.W.2d 169, 175 (Minn.1977); *Bowman v. Davis,* 48 Ohio St.2d 41, 45, 356 N.E.2d 496, 499 (1976).

667 P.2d at 1300; *Jones v. Malinowski,* 299 Md. 257, 268–70, 473 A.2d 429, 435–36 (1984); *see also Mason v. Western Pennsylvania Hosp.,* 286 Pa.Super. 354, 371–75 428 A.2d 1366, 1375–77 (1981) (Brosky, J., concurring), *rev'd* 499 Pa. 484, 453 A.2d 974 (1982). The advantages of this approach were succinctly stated by the Arizona Supreme Court.

> By allowing the jury to consider the future costs, both pecuniary and non-pecuniary, of rearing and educating the child, we permit it to consider all the elements of damage on which the parents may present evidence. By permitting the jury to consider the reason for the procedure and to assess and offset the pecuniary and non-pecuniary benefits which will inure to the parents by reason of their relationship to the child, we allow the jury to discount those damages, thus reducing speculation and permitting the verdict to be based upon the facts as they actually exist in each of the unforeseeable variety of situations which may come before the court. We think this by far the better rule. The blindfold on the figure of justice is a shield from partiality, not from reality.

*University of Arizona Health Sciences Center v. Superior Court,* 136 Ariz. at 586, 667 P.2d at 1301; *see also Ochs v. Borrelli,* 187 Conn. 253, 259, 445 A.2d 883, 886 (1982); *Sherlock v. Stillwater Clinic,* 260 N.W.2d 169, 176 (Minn.1977).

Although the benefit rule approach requires the jury to mitigate primarily economic damages by weighing them against primarily noneconomic factors, I reject the view that such a process is "an exercise in prophecy, an undertaking not within the specialty of our fact-finders." *Coleman v. Garrison,* 349 A.2d 8, 12 (Del.1975). The calculation of the benefits a parent could expect to receive from the child is no more difficult than similar computations of damages in wrongful death actions, for extended loss of consortium or for pain and suffering. *Accord University of Arizona Health Sciences Center v. Superior Court,* 136 Ariz. at 584, 667 P.2d at 1299;

*Ochs v. Borrelli,* 187 Conn. at 259, 445 A.2d at 886; *Jones v. Malinowski,* 299 Md. at 272, 473 A.2d at 437; *Troppi v. Scarf,* 31 Mich.App. at 261, 187 N.W.2d at 521 ("[D]ifficulty in determining the amount to be subtracted from the gross damages does not justify throwing up our hands and denying recovery altogether."); *see also* Note, *Wrongful Conception: Who Pays for Bringing Up Baby?,* 47 Fordham L.Rev. 418, 430 (1978) ("The wrongdoer should not be relieved of liability because the nature of his tortious conduct precludes the ascertainment of the amount of damages with certainty. The problems of uncertainty should be placed on the wrongdoer rather than on the innocent party." (footnotes omitted)).

As a final note, the parents should not be forced to mitigate their damages by resorting to abortion or to adoption. A doctrine of mitigation of damages known as the avoidable consequences rule requires only that reasonable measures be taken. *See* Restatement (Second) of Torts § 918 (1979); C. McCormick, *Damages* § 35, at 133 (1935). Most courts that have considered the matter have held, as a matter of law, neither course of action would be reasonable. *See University of Arizona Health Sciences Center v. Superior Court,* 136 Ariz. at 586 n. 5, 667 P.2d at 1301 n. 5; *Jones v. Malinowski,* 299 Md. at 272–74, 473 A.2d at 437–38; *Troppi v. Scarf,* 31 Mich.App. at 257–59, 187 N.W.2d at 519–20; *Sherlock v. Stillwater Clinic,* 260 N.W.2d at 176; *see also Ochs v. Borrelli,* 187 Conn. at 260 n. 4, 445 A.2d at 886 n. 4. I agree. The tortfeasor takes the injured party as he finds him and has no right to insist that the victims of his negligence have the emotional and mental make-up of a woman who is willing to undergo an abortion or offer her child for adoption. Moreover, the parents should not be precluded from recovering damages because they select the most desirable alternative and raise the child. Accordingly, the avoidable consequences rule is not relevant to the issue of the recovery of child rearing expenses.

Damages recoverable under the cause of action recognized today by this Court should not be limited by unstated notions of public policy so as arbitrarily to limit recovery of proximately caused and foreseeable damages. I recognize that this is an extremely difficult case but I find no public policy declaring that physicians should be partially immunized from the consequences of a negligently performed sterilization operation [4] nor declaring that the birth of a healthy child is in all circumstances a blessing to the parents. Accordingly, I see no justification for supporting a departure from the traditional rules that apply to tort damages.

I would affirm, without modification, the order of the Superior Court and permit the recovery of the potential costs of rearing the child.

---

4. "The doctor whose negligence brings about ... an undesired birth should not be allowed to say, 'I did you a favor,' secure in the knowledge that the courts will give to this claim the effect of an irrebuttable presumption." *Terrell v. Garcia*, 496 S.W.2d 124, 131 (Tex.Civ.App.1973) (Cadena, J., dissenting), *cert. denied* 415 U.S. 927, 94 S.Ct. 1434, 39 L.Ed.2d 484 (1974).