# United States Court of Appeals
## For the First Circuit

No. 17-1997

KAYLA DOHERTY,

Plaintiff, Appellant,

v.

MERCK & CO., INC.; THE UNITED STATES OF AMERICA,

Defendants, Appellees,

ATTORNEY GENERAL FOR THE STATE OF MAINE,

Intervenor, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Torruella, Kayatta, and Barron,
Circuit Judges.

Laura H. White, with whom Bergen & Parkinson, LLC was on brief, for appellant.
Steven J. Boranian, with whom Thomas J. Yoo, Reed Smith LLP, Paul McDonald, Daniel J. Mitchell, and Bernstein Shur were on brief, for appellee Merck & Co., Inc.
Susan P. Herman, Deputy Attorney General, with whom Janet T. Mills, Attorney General, and Christopher C. Taub, Assistant Attorney General, Senior Litigation Counsel, were on brief, for intervenor appellee Attorney General for the State of Maine.
Andrew K. Lizotte, Assistant United States Attorney, with whom Richard W. Murphy, Acting United States Attorney, and John G.

Osborn, Civil Chief, were on brief, for appellee United States of America.

June 18, 2018

**KAYATTA**, **Circuit Judge**. Kayla Doherty became pregnant while supposedly protected by a contraceptive implant manufactured by Merck & Co., Inc. After she gave birth to a healthy child, she brought this lawsuit against Merck, claiming that the implant and/or its applicator were defective. She also sued the federal government under the Federal Tort Claims Act, claiming that her doctor at a federally-funded community health center committed malpractice in unsuccessfully implanting the Merck product. Confronted with Maine's "Wrongful Birth Statute," which bars any claim for relief in these circumstances, Doherty presses several constitutional challenges to that statute. For the following reasons, we find that these challenges as presented on appeal fail.

**I.**

We assume (without deciding) that the following allegations, contained in Doherty's operative complaint, are true. See Calderón-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 62–63 (1st Cir. 2002). In January 2012, Doherty visited the Lovejoy Health Center ("Center") in Albion, Maine to inquire about birth control options. Because the Center is a federally funded community health center, suits based on its employees' conduct can be brought against the United States under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 1346(b). While at the Center, Doherty met with a doctor, who recommended implantable contraception in the form of either Implanon or Nexplanon. Implanon and Nexplanon are manufactured

and sold by Merck & Co., Inc. ("Merck") and are forms of hormonal birth control that prevent pregnancy by inhibiting ovulation.[1] The implant comes in the form of a small (four centimeters by two centimeters) rod that is inserted below the skin on the inner side of a woman's arm, between the bicep and tricep muscles, via a syringe-type applicator that Merck sells together with the implant. The implant provides contraception for at least three years.

Doherty returned to the Center a month later for insertion of the implant. Her doctor used a syringe to insert the implant into Doherty's arm but did not examine her arm to ensure that it was properly inserted. About a year and a half later, Doherty learned she was pregnant. She visited a hospital in Waterville, Maine to have her implant removed but the hospital staff was unable to locate it in her arm. The following day, a nurse from the Center told Doherty that the doctor who had administered her implant "believes it was never inserted." Morally opposed to abortion, Doherty carried her baby to term. She gave birth to a healthy boy in June 2014.

In April 2015, Doherty filed suit in federal court against Merck (asserting claims for strict products liability,

---

[1] Doherty's complaint does not specify whether she arranged to receive Implanon or Nexplanon. For simplicity, we refer to Doherty's contraception as "the implant."

- 4 -

breach of implied and express warranty, negligence, and negligent misrepresentation) and against the United States for the acts of the Center's doctor (asserting claims of medical negligence and informed consent). Doherty alleged that as a result of the defendants' actions, she experienced physical pain and suffering, incurred medical expenses, and suffered lost wages due to her pregnancy. She also alleged that since her son's birth, she has undergone mental health counseling associated with the distress of rearing a child as a single mother.

The United States moved to dismiss Doherty's complaint on the grounds that the district court lacked jurisdiction under the FTCA because the operation of Maine's Wrongful Birth Statute, Me. Rev. Stat. Ann. tit. 24, § 2931, barred Doherty from suing for damages stemming from the birth of a healthy child.[2] Merck also moved to dismiss in reliance on the state statute.

The Wrongful Birth Statute was proposed in the Maine legislature as part of legislation aimed at making it more difficult to recover damages from doctors for malpractice, thereby reducing malpractice insurance premiums and, in turn, healthcare costs. While the legislation was pending, Maine's Supreme Judicial Court, sitting as the Law Court, weighed in on the common law

---

[2] A suit under the FTCA is governed by the substantive tort law of the "place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

viability of claims arising out of a failed sterilization. See Macomber v. Dillman, 505 A.2d 810 (Me. 1986). The Law Court held "for reasons of public policy" that, under Maine common law, a parent could not recover damages for the birth and rearing of a healthy child. Id. at 813. The court did, however, allow the plaintiff to recover medical expenses associated with her failed tubal ligation and damages associated with her pregnancy. Id. Maine's legislature then amended the proposed legislation to include an exception to the no-recovery rule for failed sterilization procedures, apparently in an effort to mirror Macomber. As ultimately enacted, the law reads in material part as follows:

> 1. Intent. It is the intent of the Legislature that the birth of a normal, healthy child does not constitute a legally recognizable injury and that it is contrary to public policy to award damages for the birth or rearing of a healthy child.
>
> 2. Birth of healthy child; claim for damages prohibited. No person may maintain a claim for relief or receive an award for damages based on the claim that the birth and rearing of a healthy child resulted in damages to him. A person may maintain a claim for relief based on a failed sterilization procedure resulting in the birth of a healthy child and receive an award of damages for the hospital and medical expenses incurred for the sterilization procedures and pregnancy, the pain and suffering connected with the pregnancy and the loss of earnings by the mother during pregnancy.

Me. Rev. Stat. Ann. tit. 24, § 2931.

In response to the motions to dismiss, Doherty filed an amended complaint, reasserting her original claims and adding a request for a declaratory judgment that Maine's Wrongful Birth Statute is unconstitutional under the Maine and federal Constitutions, both on its face and as applied. In the alternative, Doherty sought a declaratory judgment that the statute does not apply to her. Also in her amended complaint, Doherty, for the first time, characterized the implant as a "type of sterilization procedure."

The defendants responded with a second round of motions to dismiss. Doherty opposed the motions and moved to certify various questions regarding the interpretation and constitutionality of the Wrongful Birth Statute to the Maine Law Court. Meanwhile, the district court allowed the Attorney General for the State of Maine to intervene to defend the constitutionality of the statute. After holding a hearing, the district court certified the following three questions to the Law Court:

> 1. Does the protection of Maine's Wrongful Birth statute, 24 M.R.S.A. § 2931, extend to the defendant Merck & Co., Inc., as a drug manufacturer and distributor?

> 2. If not, does the Law Court's decision in Macomber v. Dillman, 505 A.2d 810 (Me. 1986), which concerned a failed sterilization by a health care provider, apply to the plaintiff Kayla Doherty's claim against Merck as a drug manufacturer and distributor?

3. Does Maine's Wrongful Birth statute prohibit all recovery for Doherty against both defendants (Merck if it is covered by the statute, see question one, supra) because of the nature of the procedure she underwent? Or does the statute allow Doherty to proceed with her claims but limit the recoverable damages to her expenses incurred for the procedure and pregnancy, pain and suffering connected with the pregnancy, and loss of earnings during pregnancy?

The Law Court answered the first question in the affirmative, finding that the statute unambiguously bars a specific category of claims, regardless of the identity of the defendant. It declined to answer the second question but did note that the Maine legislature had "occupied the field on this issue" and that Macomber therefore no longer had "independent jurisprudential vitality." The Law Court then answered the third question in the affirmative, finding that Doherty did not qualify for the statute's sterilization exception because the implant she sought was a "temporary pharmaceutical intervention" and was not designed to be irreversible. The Law Court declined to analyze the constitutionality of the statute, leaving those issues for the district court to decide. After an additional round of briefing, the district court dismissed Doherty's case, rejecting her constitutional challenges to the Wrongful Birth Statute. This appeal followed.

In light of the Law Court's ruling, the only issues before us concern Doherty's challenges to the constitutionality of the Wrongful Birth Statute under the Maine and federal Constitutions. We review such challenges de novo. See United States v. Caro-Muñiz, 406 F.3d 22, 26 (1st Cir. 2005).

**A.**

One of Doherty's principal arguments on appeal rests on the "open courts" guarantee in Maine's Constitution. That provision states: "[e]very person, for an injury inflicted on the person or the person's reputation, property or immunities, shall have remedy by due course of law." Me. Const. art. I, § 19. Doherty argues that, in so stating, the open courts guarantee prohibits the state legislature from eliminating or severely limiting a cause of action available at common law.

In a careful and well-supported opinion, the district court judge explained why the "open courts" guarantee in Maine's Constitution provides no reason to strike down the Wrongful Birth Statute. In a nutshell, Maine's "open courts" guarantee only applies to wrongs "recognized by law as remediable in a court," Doherty v. Merck & Co. Inc., 2017 WL 3668415, at *4 (D. Me. Aug. 24, 2017) (quoting Godbout v. WLB Holding, Inc., 997 A.2d 92, 94 (Me. 2010)), and does not prevent the legislature from deeming an event to be not remediable as long as the legislature clearly

- 9 -

manifests its intent to do so, id. at *2 (citing Gibson v. Nat'l Ben Franklin Ins. Co., 387 A.2d 220, 223 (Me. 1978)).

On appeal, Doherty argues that none of the Maine cases upon which the district court relied approved an absolute substantive bar to recovery. Rather, she contends, they approved of procedural impediments such as a limitations period, see, e.g., Godbout, 997 A.2d at 93-94, that still left a diligent plaintiff with some meaningful remedy.

Doherty's description of the cases cited by the district court is accurate. But her conclusion that Maine law therefore welcomes her view of the open courts guarantee is not. Just last year, the Law Court recognized that "[t]he Legislature retains the power to determine which types of claims are available in court by limiting or even abolishing common law tort claims and causes of action." Gaudette v. Davis, 160 A.3d 1190, 1205 (Me. 2017) (emphasis added). As an example, Maine long ago eliminated -- without any apparent challenge -- any cause of action for alienation of affection. Me. Rev. Stat. Ann. tit. 14, § 301. And it was the state's highest court that actually pronounced that Maine common law did not recognize the birth of a healthy child as a remediable injury. See Macomber, 505 A.2d at 813. Doherty nevertheless claims support for her view in Maine's adoption of the rule that statutes in derogation of the common law need be strictly construed. See Ziegler v. Am. Maize-Products Co., 658

A.2d 219, 222 (Me. 1995) (restating a rule traceable to Palmer v. Inhabitants of Town of Sumner, 177 A. 711, 713 (Me. 1935)). But such a rule plainly presumes that legislation can indeed derogate the common law. Maine's Constitution appears to preclude the elimination of a cause of action for breach of contract, see Me. Const. art. I, § 11; cf. Clark v. Rust Eng'g Co., 595 A.2d 416, 419 (Me. 1991) ("The contract clause of the Maine Constitution tracks the language of the cognate federal provision."), but this preclusion would not be necessary were Doherty correct.

So, while Maine's open courts guarantee may call for a "remedy by due course of law" when there is a remediable injury, it guarantees Doherty no independent protection from the legislature's ability to decide what events or effects qualify as a remediable injury. We need say no more to reject Doherty's challenges to the district court's conclusion that the Wrongful Birth Statute does not run afoul of this provision of Maine's Constitution. See Waldron v. George Weston Bakeries Inc., 570 F.3d 5, 9 (1st Cir. 2009) ("[W]hen a district court adroitly takes the measure of a case and articulates a persuasive rationale in disposing of it, there is scant need for a reviewing court to write at length merely to hear its own words resonate.").

**B.**

Similar reasoning also disposes of Doherty's argument under Maine's jury trial provision. The Maine Constitution

- 11 -

guarantees the right to a trial by jury "[i]n all civil suits, and in all controversies concerning property."[3]  Me. Const. art. I, § 20.  Because Doherty cannot maintain a civil suit, she has no corresponding right to try such a nonexistent suit, much less to try it to a jury.

### c.

So, too, goes Doherty's argument that the Wrongful Birth Statute violates her First Amendment right under the federal Constitution to "petition the Government for a redress of grievances."  U.S. Const. amend. I.  While it is true that the right of petition includes access to the courts, see BE & K Const. Co. v. NLRB, 536 U.S. 516, 525 (2002), that right is "ancillary to the underlying claim," Christopher v. Harbury, 536 U.S. 403, 415 (2002).  Because Doherty has no underlying claim, she has no First Amendment right to petition the courts for redress of such a nonexistent claim.

---

[3] Because the Seventh Amendment of the federal Constitution limits only the federal government, see González-Oyarzun v. Caribbean City Builders, Inc., 798 F.3d 26, 29–30 (1st Cir. 2015) (per curiam), we do not address Doherty's argument that Maine's Wrongful Birth Statute violates that provision.  Were we to reach the argument, it would fail for the reasons set forth in this section.

## D.

Doherty next contends that the Wrongful Birth Statute infringes on her fundamental right to privacy.[4] As to how this infringement occurs, Doherty asserts only that "[b]y placing a value judgment on and morally reinforcing the decision to give birth to a child in the face of unintended pregnancy, the Court has impermissibly stepped into these private liberty matters."

Even if we agreed with this characterization, Doherty offers no analysis suggesting that the indirect interference about which she complains would trigger strict scrutiny. While there may be good reasons to distinguish the Wrongful Birth Statute from the line of precedent on which the defendants rely, see Harris v. McRae, 448 U.S. 297, 315, 324 (1980) (applying rational basis review to a statute that "encourages alternative activity [to abortion]"); Maher v. Roe, 432 U.S. 464, 474 (1977) (applying rational basis review to a regulation that "may have made childbirth a more attractive alternative, thereby influencing the woman's decision"), other than simply repeating her bald assertions that there must be a judicial remedy for any injury, Doherty has failed to develop an argument in favor of drawing such a distinction. Nor does she suggest that the result might be

---

[4] "[T]he substantive due process rights of the United States and Maine Constitutions are coextensive." Doe I v. Williams, 61 A.3d 718, 737 (Me. 2013).

- 13 -

different under the Maine Constitution.  It is a familiar refrain in this circuit that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Doherty makes no argument that some other form of heightened review should apply to her claim that the Wrongful Birth Statute in some indirect manner influences the choice whether to give birth.  Insofar as Doherty argues that the statute cannot survive rational basis review, a question we take up next, she provides no basis for so concluding.

Under the rational basis standard of review, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985).  Doherty bears "the burden of demonstrating that there exists no fairly conceivable set of facts that could ground a rational relationship between the challenged classification and the government's legitimate goals." Eulitt ex rel. Eulitt v. Maine, Dep't of Educ., 386 F.3d 344, 356 (1st Cir. 2004).

Here, again, we have little to add to the district court opinion setting forth the several rational bases sufficient to sustain the statute.  Briefly summarized, the district court

- 14 -

opinion points to the public policy pronouncements adopted by the Law Court in Macomber and the cost savings considerations behind the legislation of which the Wrongful Birth Statute was a part. Whether or not one agrees with these rationales, they are rational. And the Maine legislature could have rationally believed that the Wrongful Birth Statute could help achieve these objectives. Cf. Musk v. Nelson, 647 A.2d 1198, 1202 (Me. 1994) ("Limiting the availability of the discovery rule [to extend the statute of limitations] bears a rational relationship to the Legislature's goal to reduce malpractice insurance premiums and control the cost of health care.").

Doherty points out that a law can fail even rational basis review when the state's objectives are themselves invalid. But she does not explain why the case she cites in support of this proposition, City of Cleburne, Tex v. Cleburne Living Ctr., should govern here. In City of Cleburne, the Supreme Court struck down, on rational basis review, the application of a zoning ordinance to a planned living center for individuals with mental disabilities. 473 U.S. at 447-50. It rejected the city's purported justifications -- concern over negative attitudes of nearby property owners and fear that students at a junior high school in the neighborhood would harass occupants of the center -- on the grounds that accommodating private biases is not a legitimate interest. Id. Elsewhere in her brief, Doherty offers bare

- 15 -

assertions that bias is driving the government action in this case, but she does not tie these assertions to her argument under City of Cleburne. Rather, Doherty contends that Maine's purported interests are not rational because unintended motherhood forces women into welfare and onto the state's payroll. Even if this were the case, Doherty does not explain how it renders irrational the state's pursuit of its interest in reducing malpractice premiums and healthcare costs. Her remaining assertion that other portions of the legislation passed along with the Wrongful Birth Statute "already reduce[] healthcare costs" is simply a policy argument, ill-suited to rational basis review, about how far Maine should go to limit malpractice recovery at the margins. We therefore find that Doherty's arguments that the Wrongful Birth Statute is not rationally related to a legitimate governmental interest are insufficient to withstand a motion to dismiss.

**E.**

Toward the end of Doherty's opening brief, she includes two very short paragraphs with four footnotes asserting, in conclusory form, that "the [Wrongful Birth Statute] contains a gender-based classification and has a disparate impact on women." Merck's opposition brief then reviews in detail the case law and concepts that would need to be addressed to develop an equal protection challenge to part or all of the statute. Doherty's Reply offers no response. Such a skimpy effort to advance an issue

-- much less a constitutional challenge to a state statute -- waives the issue.  See Zannino, 895 F.2d at 17.  We therefore have no occasion to opine on the merits of a gender discrimination challenge to Maine's Wrongful Birth Statute.

## III.

Unpersuaded by Doherty's discernible arguments, and uncompelled to address any hints of other arguments free of development in her brief, we affirm.